**UNITED STATES of America, Appellee,**

v.

**Magtouf Ben Amor KLITI, also known as Omar, Defendant—Appellant.**

**Docket No. 97–1282**

United States Court of Appeals, Second Circuit.

Argued May 27, 1998.

Decided Sept. 2, 1998.

---

**20.** *See supra* note 8 identifying these transactions.

**21.** *See supra* note 12 identifying these occasions.

Kenneth Paul, New York City, for Defendant–Appellant.

Zachary W. Carter, United States Attorney, Eastern District of New York (David C. James, Assistant United States Attorney, David P. Porter, Assistant United States Attorney, of counsel), for Appellee.

Before: CALABRESI, Circuit Judge, and POLLACK* and DRONEY,** District Judges***

DRONEY, District Judge:

Magtouf Ben Amor Kliti, also known as Omar, ("Kliti") appeals from the May 1, 1997, judgment of the United States District Court for the Eastern District of New York (Nina Gershon, District Judge) convicting him, after a jury trial, of one count of uttering or possessing counterfeit checks in violation of 18 U.S.C. § 513(a) (1994).[1]

Kliti appeals his conviction on the ground that he was denied effective assistance of counsel because the trial court failed to conduct hearings, pursuant to *United States v. Curcio*, 680 F.2d 881 (2d Cir.1982) (a "*Curcio* hearing"), after it knew of two separate alleged conflicts of interest involving Kliti's counsel. For the reasons set forth below, we find that the fact that Kliti's counsel temporarily represented a potential witness at a bond hearing did not, in the circumstances, taint defendant's representation. But we conclude that the trial court's failure to conduct a *Curcio* hearing, after learning that defendant's counsel was a witness to a statement that tended to exculpate Kliti, violated Kliti's Sixth Amendment right to effective assistance of counsel. Accordingly, we vacate the district court's judgment.

## I. Background

A superseding indictment, returned in February 1996, charged Kliti and Sherif Abdelgwad ("Abdelgwad") with sending counterfeit bank checks to American Express, AT & T, and MBNA America Bank, N.A. (collectively, the "credit card companies").

Prior to trial, Abdelgwad signed a cooperation agreement with the government, agreed to testify against Kliti, and pled guilty to one count of possession of counterfeit checks. The trial then proceeded against Kliti, who was represented by Attorney Anastasios Sarikas.

According to the evidence at trial, Kliti and Abdelgwad made purchases and received cash through credit cards issued to Abdelgwad and then appeared to pay the credit card bills by sending personal checks drawn on bank accounts with insufficient funds. The credit card companies credited Abdelgwad's accounts in the amount of the checks before they cleared. As soon as the credit was posted on Abdelgwad's credit card accounts, Kliti and Abdelgwad used the restored credit. After several personal checks were dishonored for insufficient funds, the credit card companies stopped crediting Abdelgwad's account upon receipt of his personal check and would not post the credits until after the personal checks cleared. At that point, Abdelgwad and Kliti sent counterfeit bank checks to the credit card companies and drew down on the restored credit until the counterfeit nature of the bank checks was discovered.

At trial, the jury found Kliti guilty of one count and acquitted him on the remaining two counts.

## II. Standard of Review

■ Whether a defendant's representation violated the Sixth Amendment right to effective assistance of counsel is a mixed question

---

* The Honorable Milton Pollack, Senior District Judge of the United States District Court for the Southern District of New York, sitting by designation.

** The Honorable Christopher F. Droney, District Judge of the United States District Court for the District of Connecticut, sitting by designation.

*** Pursuant to 28 U.S.C. § 46(b) and an order of the chief judge of this court certifying a judicial emergency, this case was heard by an emergency panel consisting of one judge from this circuit and two judges of the United States District Court sitting by designation.

1. "Whoever makes, utters or possesses a counterfeited security of a State or political subdivision thereof or of an organization, or whoever makes, utters or possesses a forged security of a State or political subdivision thereof or of an organization, with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both." 18 U.S.C. § 513(a).

of law and fact requiring *de novo* review. *See United States v. Stantini,* 85 F.3d 9, 16 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 498, 136 L.Ed.2d 390 (1996).

## III. Discussion

### A. The Sixth Amendment and Conflicts of Interest

■ A defendant's right to counsel under the Sixth Amendment includes the right to be represented by an attorney who is free from conflicts of interest. *See Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981); *Holloway v. Arkansas,* 435 U.S. 475, 481–82, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *United States v. Levy,* 25 F.3d 146, 156 (2d Cir.1994).

■ When the trial court knows or reasonably should know of the possibility of a conflict of interest, it has a threshold obligation to determine whether the attorney has an actual conflict, a potential conflict, or no conflict. *See Stantini,* 85 F.3d at 13; *Levy,* 25 F.3d at 155. In fulfilling this initial obligation to inquire into the existence of a conflict of interest, the trial court may rely on counsel's representations. *See Levy,* 25 F.3d at 154. If a district court ignores a possible conflict and does not conduct this initial inquiry, reversal of a defendant's conviction is automatic.[2] *See Id.* at 153; *United States v. Jiang,* 140 F.3d 124, 127 (2d Cir.1998).

■ If, through this inquiry, the court determines that the attorney suffers from an actual or potential conflict of interest, the court has a "disqualification/waiver" obli-

gation.[3] *See Levy,* 25 F.3d at 153. If the conflict is so severe that no rational defendant would waive it, the court must disqualify the attorney. *See Id.* If it is a lesser conflict, the court must conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation.[4] *See United States v. Leslie,* 103 F.3d 1093, 1098 (2d Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997); *Levy,* 25 F.3d at 153.

■ If, as a result of its inquiry, the court concludes that there is no conflict, and therefore no need to disqualify the attorney or to hold a *Curcio* hearing, a defendant's claim that such a conclusion was in error will not establish a violation of the Sixth Amendment right to effective assistance of counsel unless the defendant can demonstrate that the attorney had either "(1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." *Leslie,* 103 F.3d at 1098; *Levy,* 25 F.3d at 154–55.

Here, Kliti, in effect, asserts that Attorney Sarikas had two separate conflicts of interest and that the district court erred in failing to conduct *Curcio* hearings to determine whether Kliti waived his right to conflict-free representation. The two conflict issues presented on appeal are: (1) whether the court should have conducted a *Curcio* hearing when it learned that Sarikas had previously represented Abdelgwad; and (2) whether the court should have conducted a *Curcio* hearing when it learned that Sarikas was a potential witness at trial.[5]

---

**2.** Kliti's appeal challenges only the trial court's decision not to hold a *Curcio* hearing. Kliti does not claim that the trial court failed to fulfill its initial inquiry obligation. Accordingly, the automatic reversal rule is not implicated in this appeal.

**3.** "[A]n attorney has an actual, as opposed to a potential, conflict of interest when 'during the course of the representation, the defendants' interests ... diverge with respect to a material fact or legal issue or to a course of action.' " *United States v. Fulton,* 5 F.3d 605, 609 (2d Cir.1993) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (Marshall, J., concurring in part, dissenting in part)). A potential conflict of interest exists if the inter-

ests of the defendant may place the attorney under inconsistent duties at some time in the future. *See Cuyler,* 446 U.S. at 356 n. 3, 100 S.Ct. 1708.

**4.** Before a defendant can knowingly and intelligently waive a conflict, the court must: (1) advise the defendant about potential conflicts; (2) determine whether the defendant understands the risks of those conflicts; and (3) give the defendant time to digest and contemplate the risks, with the aid of independent counsel if desired. *See Curcio,* 680 F.2d at 888–90.

**5.** Although Kliti's appeal asserts only one general claim of conflict of interest, there are in fact two distinct conflict of interest claims presented.

## B. Defense Counsel's Prior Representation of Abdelgwad

After Abdelgwad's arrest, a court-appointed attorney appeared with him at his arraignment and bond hearing. At that hearing, a magistrate judge set bond with several conditions and the hearing was continued pending satisfaction of the bond conditions.

The court scheduled a preliminary hearing for Kliti and the continuation of Abdelgwad's bond hearing for the same time. Abdelgwad appeared at the continuation of his hearing without his attorney. Attorney Sarikas, who appeared on behalf of Kliti, informed the magistrate judge that Abdelgwad's attorney was unavailable and had asked Sarikas to appear on Abdelgwad's behalf at this proceeding. At the hearing, Sarikas represented Kliti and continued the efforts of Abdelgwad's attorney to arrange pretrial release for Abdelgwad. The magistrate judge approved the bond for Abdelgwad that was ordered at the initial hearing, with minor modifications. At all subsequent court proceedings, Abdelgwad was represented by separate counsel.

The trial court first became aware of Sarikas's previous representation of Abdelgwad during Kliti's trial, at the beginning of Sarikas's cross examination of Abdelgwad. One of the first questions Sarikas asked Abdelgwad was "This is not the first time you and I have met; is that correct?" The government objected and the court excused the jury. Sarikas then informed the court that he had temporarily represented Abdelgwad during his bond hearing. Sarikas stated that he had not interviewed Abdelgwad "with respect to the facts of this case in any way or form" and he explained to Abdelgwad before the bond hearing that there was a potential conflict of interest. Sarikas also represented to the court that he only obtained "preliminary information from [Abdelgwad] in terms of his background" to assist in Abdelgwad's bond application, such as whether Abdelgwad had a criminal record and his community ties.

Once the trial court was apprised of the previous representation, it questioned Sarikas and determined that there was no actual or potential conflict for Kliti as a result of Abdelgwad's prior representation by Sarikas.

The court concluded that Sarikas's representation was limited to the bond hearing and "there were no substantive conversations whatsoever." *See Mannhalt v. Reed,* 847 F.2d at 576, 580 (9th Cir.1988) (finding no Sixth Amendment violation arising from defense counsel's prior representation of a government witness during a lineup and arraignment); *see also Salam v. A.L. Lockhart,* 874 F.2d 525, 528 (8th Cir.1989) (representation merely at bond hearing not sufficient to raise conflict).

Kliti now contends that the court had a duty to go beyond this threshold inquiry. Kliti argues that the court should have realized that a potential conflict of interest existed as a result of Sarikas's representation of Abdelgwad during the bond hearing and a *Curcio* hearing should have been conducted for Kliti. However, as the Supreme Court stated in *Holloway,* "[r]equiring or permitting a single attorney to represent codefendants ... is not *per se* violative of constitutional guarantees of effective assistance of counsel. This principle recognizes that in some cases multiple defendants can appropriately be represented by one attorney." *Holloway,* 435 U.S. at 482, 98 S.Ct. 1173. The danger of a joint representation "is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." *Id.* at 490, 98 S.Ct. 1173 (emphasis in original).

In the decisions finding a conflict of interest arising from joint representation of a defendant and an adverse witness, the defendant's attorney's ability to cross-examine a witness is often limited because of confidential information received during the attorney's prior representation of the witness. *See, e.g., United States v. Malpiedi,* 62 F.3d 465 (2d Cir.1995). Here, the court concluded that Attorney Sarikas did not acquire any confidential information relevant to the issues at trial during his representation of Abdelgwad at the bond hearing. Defendant does not dispute this conclusion, but argues that Attorney Sarikas's general "duty of loyalty" to Abdelgwad hindered his ability to cross-examine Abdelgwad.

■ Although there may be situations where an attorney's representation of an individual at a bond hearing or other preliminary hearing might create a potential or actual conflict of interest, this record does not present that situation. When Sarikas appeared for Abdelgwad at the bond hearing, Abdelgwad had already obtained separate counsel. Sarikas was helping Abdelgwad because Abdelgwad's attorney was unable to attend, and the continued hearing dealt only with matters from the earlier hearing when Abdelgwad was represented by separate counsel. Sarikas advised Abdelgwad that he was Kliti's attorney and that Abdelgwad should not provide him with any substantive information because of the possible conflict of interest that could result. Sarikas obtained only information to allow him to address the court's questions regarding Abdelgwad's release pending trial. After the conclusion of the bond hearing, Sarikas did not have any further role in Abdelgwad's representation. Under these circumstances, no actual or potential conflict of interest was present and the court was not obligated to conduct a *Curcio* hearing. *See Levy*, 25 F.3d at 153. Accordingly, the defendant's Sixth Amendment rights were not violated by the court's failure to conduct a *Curcio* hearing in connection with Sarikas's prior representation of Abdelgwad.

### C. Defense Counsel as a Potential Witness

■ The more troubling issue involves Sarikas's role as a potential witness. A *Curcio* hearing is required whenever a defendant would forgo important testimony by his attorney because of his attorney's continued representation of him. *See Ciak v. United States*, 59 F.3d 296, 305 & n. 5 (2d Cir.1995); *Levy*, 25 F.3d at 153 n. 5; *United States v. Iorizzo*, 786 F.2d 52, 57–59 (2d Cir.1986).

■ Abdelgwad was a key government witness at trial and testified extensively about Kliti's involvement in the credit card and counterfeit check scheme. During his cross-examination of Abdelgwad, Attorney Sarikas sought to inquire about a conversation he had with Abdelgwad shortly after the hearing at which he represented both Abdelgwad and Kliti. Sarikas explained to the court, out of the presence of the jury, that Abdelgwad went to Sarikas's office to thank Sarikas for representing Abdelgwad during the bond hearing and told Sarikas, in the presence of Kliti and another person named Abdul Hamid ("Hamid"), that Kliti had "absolutely nothing to do with this [the charged offenses] and that he [Abdelgwad] would let the authorities know about that."

The court justifiably was concerned that Sarikas would become an unsworn witness if he questioned Abdelgwad about this statement during cross-examination. *See Ciak*, 59 F.3d at 304–05 ("[s]tanding alone, becoming an unsworn witness is a basis for disqualification of an attorney."). The court engaged in the following colloquy with Sarikas and the government in an attempt to fashion a method to allow Sarikas to question Abdelgwad about the exculpatory statement, without having Sarikas become an unsworn witness:

THE COURT: I wonder whether or not this could be done and it would certainly eliminate some of the concerns I have, by asking the witness [Abdelgwad] whether or not in the presence of Mr. Hamid and certain other individuals that are not going to be named or you could name Mr. Kliti, but just not yourself that he made a certain statement.

[THE GOVERNMENT]: Without indicating—

THE COURT: Without indicating it was in counsel's office, without indicating counsel was present.

MR. SARIKAS: I would do that. What would happen, however, if he said no to that, would I have to more specifically refer?

THE COURT: No. You said you had Mr. Hamid available. On the other hand, I don't know Mr. Hamid can testify to it— can he?

MR. SARIKAS: It really depends. I brought him [Hamid] here for two reasons.

THE COURT: Mr. Abdelgwad is not a defendant. My concern is did you say to me and you, of course, can't testify and you would become kind of an unsworn witness here. You ask the question, the jury thinks you're an honest sort, they're going to accept that it was said even though he denies it.

The court, the government and Sarikas then agreed that Sarikas could avoid the unsworn witness problem by cross-examining Abdelgwad without referring to where the statement was made or whether Sarikas was present. The court did not conduct a *Curcio* hearing to determine whether Kliti consented to this limitation or whether Kliti might have preferred having an unconflicted attorney who could call Attorney Sarikas as a witness to impeach Abdelgwad.

Cross-examination was resumed and Abdelgwad flatly denied making the exculpatory statement. Sarikas was not able to press Abdelgwad further on this issue, pursuant to the agreement. At that point, the only witness, other than the defendant Kliti, who could testify about the exculpatory statement was Hamid. Hamid, however, asserted his Fifth Amendment privilege against self-incrimination and refused to testify.[6] As a result of Hamid's intention to assert the Fifth Amendment, Sarikas did not call Hamid as a witness. No further testimony about the exculpatory statement was introduced. The court did not conduct a *Curcio* hearing

after Hamid chose not to testify and did not revisit the issues of whether Sarikas should testify about the statement or whether a conflict existed.

Even assuming that the district court's decision to avoid the unsworn witness problem by excluding any reference to Sarikas's presence might have been appropriate when it appeared that another witness—Hamid—could testify about it, a *Curcio* hearing should likely have been held at that time.[7] In any event, when it became clear that Hamid would not testify about the exculpatory statement, the need for a *Curcio* hearing became patent. At that point, Sarikas was in a clear conflict because he was faced with the choice of (1) testifying on behalf of his client, which would result in his disqualification,[8] or (2) not presenting evidence of the exculpatory statement. When faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney, not to exclude the testimony. *See United States v. Dennis*, 843 F.2d 652, 656 (2d Cir.1988). Here, however, Sarikas did not testify and the trial proceeded without any evidence of the statement.[9]

The court, therefore, was obligated to question Kliti, in accordance with *Curcio*, to determine whether he was willing to waive his right to a conflict-free lawyer and to forgo confronting Abdelgwad with the exculpatory statement through the testimony of Sarikas. The court should have explained to Kliti that Sarikas could not be a witness—

---

**6.** The court accepted the representations made by Hamid's lawyer and found that there was a good faith basis for asserting his Fifth Amendment privilege not to testify.

**7.** An agreement to limit inquiry to avoid the problem of counsel as an unsworn witness may be appropriate in some circumstances. *See, e.g., United States v. Jones*, 900 F.2d 512, 520 (2d Cir.1990).

**8.** If Sarikas were to be a sworn witness, he should be disqualified as the trial attorney. *See United States v. Peng*, 766 F.2d 82, 87 (2d Cir. 1985); *United States v. Cunningham*, 672 F.2d 1064, 1074 (2d Cir.1982). *See also* ABA Model

Code of Professional Responsibility, DR 5–102(A) ("If, after undertaking employment in the contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial ... except that he may continue the representation [in certain limited circumstances not at issue here].").

**9.** The government contends that Sarikas was not conflicted because he could have called two additional witnesses who were present when the statement was made: Jalel Oueslati ("Oueslati") and Kliti. However, Sarikas did not remember Oueslati being present and the defendant chose not to testify at trial.

sworn or unsworn—while Sarikas was representing Kliti, but that if Kliti were represented by another attorney, that attorney would be able to call Sarikas as a witness and have him testify about the statement.[10]  *See Id.; Cunningham,* 672 F.2d at 1075.

### D.  Was Kliti Prejudiced?

In the absence of a knowing and intelligent waiver, this court must determine whether Sarikas's conflict denied Kliti effective assistance of counsel.  *See Levy,* 25 F.3d at 155.  To establish a violation of Kliti's Sixth Amendment right to effective assistance of counsel, Kliti must show that Sarikas had either "(1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance."[11]  *Levy,* 25 F.3d at 152.  Even assuming that Sarikas's conflict was merely potential, thus requiring Kliti to satisfy the "prejudice" standard, we conclude that Kliti has established a violation of his Sixth Amendment rights.

Abdelgwad testified extensively about his and Kliti's participation in the scheme and he was the only witness who provided direct evidence of Kliti's use of the counterfeit bank checks to pay the credit card companies as specified in the indictment.  Abdelgwad's credibility was essential to Kliti's conviction.  Attorney Sarikas's testimony about the exculpatory statement would have been admissible as important impeachment evidence to attack Abdelgwad's credibility.

We conclude that Kliti was prejudiced when there was no meaningful impeachment of Abdelgwad without the testimony of Sarikas.

## IV.  Conclusion

In light of the foregoing, we reverse Kliti's conviction and remand for a new trial based on the violation of his Sixth Amendment right to effective assistance of counsel.[12]  The judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.

---

10.  If, on remand, the defendant wishes to be represented by Sarikas, the trial court should conduct a *Curcio* hearing to determine whether the defendant will knowingly and intelligently waive the conflict.  We recognize that the trial court "must be allowed substantial latitude in refusing waivers of conflicts of interest...." *Wheat v. United States,* 486 U.S. 153, 163, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).  Accordingly, we do not express an opinion as to whether the district court should accept such a waiver under the circumstances presented in this case.  *Compare United States v. Arrington,* 867 F.2d 122, 129 (2d Cir.1989) (district court disqualified defense counsel despite defendant's offer to waive his right to call his attorney as a witness where, *inter alia,* such waiver would require defendant to "forgo[] the presentation of the most relevant evidence ....") *with Williams v. Meachum,* 948 F.2d 863, 867 (2d Cir.1991) (affirming district court's acceptance of defendant's waiver).

11.  To prove prejudice, a defendant must establish that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Fulton,* 5 F.3d at 609.  "However, prejudice is presumed when a defendant establishes that an attorney has an actual conflict of interest that adversely effected the lawyer's performance." *Id.* Under this circumstance, a defendant need only demonstrate that some " 'plausible alternative defense strategy or tactic might have been pursued' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.' " *Levy,* 25 F.3d at 157 (quoting *Winkler v. Keane,* 7 F.3d 304, 309 (2d Cir.1993)).

12.  Because Kliti was denied effective assistance of counsel based solely on Sarikas's role as a potential witness to the alleged exculpatory statement, the court does not address Kliti's contention that he was denied effective assistance of counsel as a result of Sarikas's role as an unsworn witness to certain events with the government's confidential informant, who also testified at trial.