**UNITED STATES of America, Plaintiff,**

v.

**Gregory AYALA, Defendant.**

No. 97 CR. 786(SAS).

United States District Court, S.D. New York.

March 31, 1999.

M. Katherine Baird, Robin L. Baker, Mary Mulligan, Assistant United States Attorneys, New York City, for the Government.

Marc Fernich, New York City, for Gregory Ayala.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

 Following his conviction on four counts of RICO, RICO conspiracy, conspiracy to distribute heroin, and conspiracy to distribute crack, defendant Gregory Ayala (a/k/a "Greggo") brings a motion for a judgment of acquittal pursuant to Fed. R.Crim. Pro. 29 or a new trial pursuant to Fed. R.Crim. Pro. 33. In considering a Rule 29 motion to acquit for lack of evidence, the reviewing Court must consider the evidence "in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government, and may overturn the conviction only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hernandez,* 85 F.3d 1023, 1030 (2d Cir.1996). The Court must defer to the jury's resolution of the weight of the evidence and the credibility of witnesses. *United States v. Morrison,* 153 F.3d 34, 49 (2d Cir.1998). Pursuant to Rule 33, the Court "may grant a new trial …. if required in the interest of justice." Fed.

R.Crim.P. 33. Whether to grant a new trial rests in the broad discretion of the trial judge, who may weigh the evidence and determine the credibility of witnesses. *United States v. Sanchez,* 969 F.2d 1409, 1413 (2d Cir.1992). A court's discretion to grant a Rule 33 motion should "be exercised sparingly," for it is "only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" *Id.* at 1414. For the reasons set forth below, Ayala's motions are denied.

Defendant first argues that he is entitled to a new trial pursuant to Rule 33 because he should have been severed from his codefendants. In essence, defendant argues that evidence of the "war" of violence between the two gangs, Power Rules and the Avenue St. John Boys, was inadmissible against him, and that the jury improperly used this evidence to infer Ayala's guilt on the drug and RICO charges. In particular, he points to statements by the leader of Power Rules, Miguel Guzman—which were admitted at trial both as party admissions and as statements of a coconspirator in furtherance of the conspiracy—that in substance revealed that Guzman wanted to kill Ayala because of the breakdown in their drug dealing partnership. He argues that because at the time these statements were made Ayala could not have been part of any Power Rules conspiracy, these statements could not be used against him, and that they therefore improperly prejudiced him.

■ Motions to sever criminal defendants are not favored, and individuals who have been indicted together for crimes arising out of the same set of acts should generally be tried together in order to avoid devoting judicial resources to lengthy multiple trials. *United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983). In order to overturn a denial of a separate trial a defendant must show that he suffered prejudice so substantial that a "miscarriage of justice" occurred. *United States v. Rosa,* 11 F.3d 315, 341 (2d Cir. 1993); *United States v. Friedman,* 854 F.2d 535, 563 (2d Cir.1988).

■ Ayala has not shown that he suffered prejudice so substantial as to warrant a separate trial. The Court ruled in limine that evidence of Ayala's participation in shootings or war-related activities would not be admitted, and the Court abided by this ruling in excluding such evidence. *See* 3/5/98 Conf. at 115–122; Tr. 569–575; 1178–79; 1188; 1256–58. Although some of the Government's witnesses testified that Ayala was present at shooting scenes, and at least one witness testified that he possessed a gun on one such occasion, *see, e.g.,* Tr. 1216–1217; 1980; 2493–2503, this evidence did not unduly prejudice him. Even in a separate trial, evidence of the breakdown of Ayala's relationship with Guzman—which provided the motive for the "war"—would have been admissible as evidence of his previous drug partnership with Guzman and Power Rules, and thus of Ayala's guilt of the drug counts for which he was charged.[1] *See Rosa,* 11 F.3d at 341 (evidence that would have been admissible in separate trial is neither spillover nor prejudicial).

■ In addition, Ayala's argument that his trial counsel provided ineffective assistance of counsel for failing to make a written pre-trial motion to sever Ayala's trial is rejected. Counsel made several oral motions to sever, all of which were denied by the Court. *See* 3/5/98 Conf. at 16; 3/12/98 Conf. at 7–8; Tr. 6416–19. Similarly, the failure to object to the admission or redaction of Ayala's post-arrest statement does not amount to ineffective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

---

1. At Ayala's counsel's objections, the Court instructed at various points during the trial that Guzman's statements were admitted to show his motive or for background purposes only. *See* Tr. 4866–67; 4903–05; 6416–19.

Second, a careful review of the record reveals sufficient evidence from which a rational jury could have concluded that Ayala engaged in a crack conspiracy and heroin conspiracy with Power Rules, and thus that he was guilty of the RICO and RICO conspiracy charges. Defendant argues that with regard to the crack charge, the evidence shows, at best, that he sold crack with the knowledge of Guzman. Louis Soto, a member of Power Rules, testified at trial that at a meeting of Guzman, Soto and Ayala, Guzman expressly decreed that there would be only one crack and heroin spot on the block on which Ayala was selling those drugs. As a result, Soto could not sell at that spot. *See* Tr. 1140–50. Soto also testified that Ayala stated that "me and Miguel is partners and we go half and half on everything," and that Ayala was associated with Power Rules. *Id.* at 1144–45; 1153. The jury had the right to find Soto credible. Accordingly, the evidence was sufficient to support Ayala's conviction for conspiracy to sell crack with Guzman and Power Rules.

With regard to the heroin conspiracy, the evidence included testimony that Guzman had gone regularly to visit "Greggo" at the spot where he sold crack and heroin and that Guzman discussed Bad Boy heroin with Ayala. *See id.* at 6259–61 (Testimony of Elizabeth Perez). There was also evidence that Guzman gave Ayala heroin to sell and that they were sharing profits from the heroin sales. *See, e.g., id.* at 1159–1161 (Testimony of Louis Soto); 3928–29 (Testimony of Rolando Lorenzo). Moreover, the evidence included a statement by Ayala that for two years he sold drugs procured from Viejo and delivered them to Sebastian Felix, another alleged conspirator in the Powers Rules enter-

prise. *See id.* at 3928–29.[2] From this evidence, combined with evidence of Guzman's role in Power Rules and the distribution of heroin by other Power Rules' members, the jury could have inferred that Ayala was part of a conspiracy with Power Rules to distribute heroin, and was not merely involved in a "side" conspiracy with Guzman.

Third, Ayala argues that the Court erred in failing to give the jury a *"Reves"* charge regarding operation or management for the RICO conspiracy count. The law in this Circuit is to the contrary. *See Madanes v. Madanes,* 981 F.Supp. 241, 248 (S.D.N.Y.1997) (defendant can be found guilty of RICO conspiracy even if he was not operator or manager under *Reves* ) (citing *United States v. Viola,* 35 F.3d 37 (2d Cir.1994)). Moreover, defendant was convicted of a substantive RICO count, for which the *Reyes* charge was given, indicating that the jury did indeed find that Ayala played a role in the enterprise's operation or management.

Fourth, Ayala argues that a post-trial *Curcio* hearing is necessary because his trial counsel previously stood in for Guzman's attorney at an arraignment. The facts surrounding this brief representation, however, do not require such a result. This Court inquired into any possible conflict of interest and was satisfied that Ayala's counsel did not have any substantive discussions about the facts of Guzman's case or acquire any confidential information from him. Further, counsel represented that he did not believe there was any conflict and that on behalf of himself and his client, he waived any claim of conflict. Because this initial inquiry

---

2. In his statement, Ayala said that he had gotten the heroin from Viejo for Guzman and would deliver it to Sebastian Felix. In protecting the *Bruton* rights of Guzman during the trial, the court substituted the term "Power Rules" for "Guzman." Defendant argues that such redaction prejudiced Ayala in that it provided evidence that Ayala was involved in the Power Rules enterprise, crippling his

defense that he was only involved in a separate heroin conspiracy with Guzman. Given the evidence of Guzman's leadership role in Power Rules, this substitution was proper. Moreover, given the other evidence of Ayala's involvement in the heroin conspiracy, mentioned above, any error in this regard was harmless.

revealed an absence of any conflict, a full *Curcio* hearing was not required. *See United States v. Kliti,* 156 F.3d 150 (2d Cir.1998).

Fifth, I find no error in the inquiry of jurors following a radio report of the dismissal of sleeping jurors during the trial. This Court questioned the three jurors who heard the news report outside the presence of the other jurors and determined that the report did not prevent them from deciding the case fairly. The fact that the three jurors were questioned together, rather than individually, does not require acquittal or a new trial.

Finally, defendant's argument based upon *United States v. Singleton,* which has been vacated, is rejected. *See* 144 F.3d 1343 (10th Cir.1998), *vacated and rehearing en banc granted,* 144 F.3d 1343 (10th Cir.1998), 165 F.3d 1297 (10th Cir.1999).

Sentencing is scheduled for May 18, 1999 at 4:30 p.m.

SO ORDERED: