**UNITED STATES of America,**

v.

**Esteban GONZALEZ, a/k/a "Stevie Gonzalez," a/k/a "Steven Gonzalez", Defendant.**

**No. 00 CR. 447(DLC).**

United States District Court,
S.D. New York.

June 12, 2000.

Marc A. Weinstein, Asst. U.S. Atty., Mary Jo White U.S. Atty., Office of U.S. Atty., New York City, for U.S.

Alexander E. Eisemann, New York City, Barry Burke, Federal Public Defenders Service, New York City, for Defendant.

## OPINION and ORDER

COTE, District Judge.

The issue before the Court is whether defendant's assigned counsel must be disqualified due to a conflict arising from his current representation of another criminal defendant who may be called as a trial witness. The defendant Esteban Gonzalez ("defendant" or "Gonzalez") is charged in four counts with crimes relating to his alleged repeated stabbing of a fellow inmate in the New York Metropolitan Correctional Center ("MCC") on February 28, 1999. The stabbing occurred in a "dorm cell" holding up to 25 inmates, each of whom is a potential witness to the incident. One of the dorm cell inmates is Kwok Ching Yu ("Yu"), whom defense counsel Alexander E. Eisemann ("Eisemann") also represents in an unrelated criminal case before the Honorable Lewis A. Kaplan. Eisemann recently notified the Government and the Court that he intends to call Yu as a witness at the defendant's trial. For the reasons discussed below, Eisemann is disqualified as defense counsel for Gonzalez.

## BACKGROUND

The defendant was arraigned on May 4, 2000, at which time counsel from the Legal Aid Society was assigned for purposes of the arraignment only, because the defendant had requested that Eisemann, who is a member of the Court's CJA panel, be appointed to represent him. Eisemann had been representing the defendant as CJA counsel for approximately one year in a proceeding before the Honorable Whitman Knapp.[1]

At the initial pretrial conference on May 5, 2000, counsel from the Legal Aid Society and Eisemann both appeared. Counsel from the Legal Aid Society noted that because the crime occurred at the MCC in the presence of a number of inmate witnesses, there was a strong likelihood that the Legal Aid Society had represented at least one of the witnesses and that therefore a conflict of interest would exist. For this reason, the Legal Aid Society requested that it not be assigned to this case. Eisemann then explained that the defendant had gone "through a couple of lawyers before" Eisemann was appointed to represent him in the case before Judge Knapp, that the defendant had a strong preference for him, and that he was already familiar with the facts of the case. The Court granted the joint request from the defendant and Eisemann to have Eisemann assigned as counsel, but warned the defendant:

> I want you to understand that when one has assigned counsel, one is not in the position of choosing who is assigned to represent you, and should there ever come a point in time where it is no longer appropriate for Mr. Eisemann to represent you, for some reason that I decide, at that point I will be appointing you [a different] attorney to represent you. Do you understand that?

The defendant answered that he understood. The Court set the case down for trial on June 19.

On June 5, 2000, the Government wrote to advise the Court that it had learned that Eisemann was representing Yu in an unrelated criminal proceeding before Judge Kaplan and that Yu, one of the inmates in the dorm cell when the stabbing occurred, was a potential witness in this case.[2] The Government stated that it did not intend to call Yu as a witness, but nonetheless, in light of Eisemann's dual representation of the defendant and a potential witness, re-

---

1. In Judge Knapp's case, Gonzalez is currently litigating a Rule 33 motion to set aside the jury verdict and to vacate his 1996 conviction for possessing a firearm after having been previously convicted of a felony. Eisemann was appointed to represent Gonzalez by Judge Knapp on January 19, 1999.

2. It appears that the Government became aware that Eisemann represents one of the potential witnesses from the dorm cell only when Eisemann so indicated in motion papers. It is unclear whether the Government itself had taken the steps it should to ensure that any possible conflict was identified as promptly as possible.

quested a hearing pursuant to *United States v. Curcio,* 680 F.2d 881 (2d Cir. 1982), to advise the defendant of his right to conflict-free representation. The Court scheduled a hearing for June 8.

At the hearing, to the surprise of the Court and the Government, Eisemann stated that he planned to call Yu as a witness, as, upon Eisemann's questioning, Yu had provided him with a version of the events in this case that exculpated Gonzalez. The Government stated that it would cross-examine Yu and that that would cause a conflict with any redirect by Eisemann. Referring to the serious conflict issues for both Yu and Gonzalez, the Court indicated that it might not accept a waiver from the defendant. Eisemann then suggested that perhaps, if he found additional witnesses, he might choose, or the defendant alone could choose, not to call Yu as a witness. To give counsel an opportunity to reflect on the changed circumstances and to present written submissions, the Court adjourned the hearing to the next day. Both parties then made written submissions.

At the conference the following day, Eisemann stated that Yu had not waived his attorney-client privilege and suggested that Yu would need independent counsel to advise him regarding any testimony he might give in this case. The Court expressed its belief that this was a situation in which a *Curcio* hearing would not adequately address the actual conflicts created by Eisemann's dual representation of the defendant and of Yu. The Government agreed, adding that should Yu attempt to give testimony exculpating Gonzalez, it would cross-examine Yu based on his prior inconsistent statements. Eisemann made various suggestions as to how he believed any conflict of interest might be cured, including the following: Yu, with the aid of independent counsel, might decide to waive his attorney-client privilege and/or his right to conflict-free representation; the interpreter who was present during the conversation between Yu and Eisemann could testify as to the form of Eisemann's questions, if not the substance of the conversation; the trial could be adjourned to a date when Eisemann's representation of Yu would be concluded; independent counsel could examine Yu at trial; or Eisemann could be relieved as Yu's counsel. In a subsequent submission, Eisemann has stated that it is

> abundantly clear that both Yu and [the defendant] must have independent counsel to advise and represent them on the following issues: whether Mr. Gonzalez should call Yu as a witness, whether Yu should agree to testify or invoke his fifth amendment rights and, if he does, whether Mr. Gonzalez should seek to compel his testimony.

## DISCUSSION

■ The Sixth Amendment right to effective assistance of counsel includes the right to conflict-free representation. *See United States v. Rogers,* 209 F.3d 139, 143 (2d Cir.2000). To ensure that a defendant's right to conflict-free counsel is adequately safeguarded, a district court has an obligation whenever it is "sufficiently apprised of even the possibility of a conflict of interest" to initiate an inquiry and to disqualify counsel or seek a waiver from the defendant whenever the inquiry reveals that there is an actual or potential conflict of interest. *United States v. Levy,* 25 F.3d 146, 153 (2d Cir.1994). Moreover, this Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).

■ In conducting an inquiry regarding a conflict, a court must first investigate the details of the attorney's interests " 'to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.' " *Rogers,* 209 F.3d at 143 (quoting *Levy,* 25 F.3d at 153). An actual conflict is one that is so "severe" that "no rational defendant would knowingly and intelligently desire

the conflicted lawyer's representation." *Levy*, 25 F.3d at 146. *See also United States v. Lech*, 895 F.Supp. 586, 589–90 (S.D.N.Y.1995). As the Second Circuit has described it, an actual conflict exists when, "during the course of representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,'" *United States v. Blau*, 159 F.3d 68, 74 (2d Cir.1998) (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir.1993)), or "when the attorney's representation to the defendant is impaired by loyalty owed a former client," *Blau*, 159 F.3d at 75. In such cases, the Court must disqualify the attorney, *Levy*, 25 F.3d at 153, even if the defendant expresses a desire to waive his right to conflict-free counsel. As the Supreme Court has stated:

> while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat*, 486 U.S. at 159, 108 S.Ct. 1692 (holding that there was no error in declining petitioner's waiver of his right to conflict-free counsel and refusing to permit his proposed substitution of attorneys). *See also United States ex rel. Stewart v. Kelly*, 870 F.2d 854, 858 (2d Cir.1989) (consent would not be dispositive given trial court's independent obligation to ensure a fair trial).

■ In light of a district court's obligation to ensure that a defendant receives a fair trial, the court should conduct any necessary inquiry as to possible conflicts of interest "sooner rather than later," so that "any conflict is identified and either eliminated or knowingly and voluntarily waived pre-trial." *Rogers*, 209 F.3d at 146. While it is clearly preferable that such an inquiry be conducted pretrial, at that point, it may be difficult to identify each of the "specific trial episodes in which the conflict" may come into play. *Id.* For this

reason, "where a serious potential conflict of interest exists, a trial judge has broad discretion to refuse a defendant his or her choice of counsel." *Stewart*, 870 F.2d at 856. *See also Wheat*, 486 U.S. at 164, 108 S.Ct. 1692 (holding that presumption in favor of petitioner's counsel of choice "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict"). As the Honorable Michael B. Mukasey has stated:

> The authority of *Wheat* makes clear that that part of the *Levy* test which involves an assessment of how serious the conflict is, must include not only actual but also potential conflicts, and must include as well both a prudent awareness of how little can be predicted with certainty before a trial begins and a sober regard for how much can go wrong once a trial starts.

*United States v. Rahman*, 861 F.Supp. 266, 275 (S.D.N.Y.1994).

■ Although joint representation of co-defendants or of a defendant and a witness is not a *per se* violation of the constitutional right to effective assistance of counsel, "[i]t is hard to conceive of a conflict of interest between clients that would not be serious." *Stewart*, 870 F.2d at 857. *See also Blau*, 159 F.3d at 74. "The danger of a joint representation 'is in what the advocate finds himself compelled to refrain from doing....'" *Blau*, 159 F.3d at 74 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)). This danger exists even in situations where the representation of the clients concerns different matters. *Stewart*, 870 F.2d at 857. In this case, numerous conflicts, both actual and potentially serious, arise from Eisemann's representation of both Yu and the defendant, including the following.

■ First, if Yu takes the stand at trial, even as a defense witness, Eisemann's ability to examine him may be significantly limited. If Yu were to offer testimony adverse to the defendant, Eisemann would be impaired in deciding whether to im-

peach Yu both by his duty of loyalty to Yu and by his obligation not to reveal Yu's confidential communications. Even if Yu does not offer testimony adverse to Gonzalez, Eisemann's examination of Yu may be hampered by his concern that he not reveal any privileged conversation he has had with Yu. Eisemann would be impaired in his examination of Yu regardless of whether or not his representation of Yu had terminated at that time and regardless of whether the Government or the defendant calls Yu as a witness.

Furthermore, Eisemann owes Yu a duty of loyalty that is already compromised.[3] The Government has indicated its intention to cross-examine Yu based on his prior inconsistent statements. This raises the possibility that the Government may wish to use Yu's testimony in this trial against him at his pending sentencing or may decide to prosecute Yu for perjury based on his testimony at Gonzalez's trial. For this reason, among others, an independent attorney for Yu might advise him not to testify in this case. An attorney for Gonzalez, on the other hand, would likely want Yu to testify since he has indicated that his testimony would be exculpatory. Therefore, Yu's interests are not necessarily aligned with those of the defendant, and this conflict will not simply disappear at the moment Eisemann no longer represents Yu. A lawyer's duty of loyalty survives the termination of the formal attorney-client relationship. *See Rahman,* 861 F.Supp. at 274. *See also Levy,* 25 F.3d at 156.

An additional, very serious issue is the possibility that Eisemann might become a witness at trial. If Yu's testimony in any way contradicts or limits the representations he made to Eisemann, Gonzalez may wish to present Yu's prior statements to Eisemann to the jury.[4] The same problem arises if the Government inquires on cross-examination as to the circumstances of Yu's coming forward with new exculpatory information. In this situation, the defendant might wish to elicit Eisemann's testimony about the conversation so as to rehabilitate Yu as a witness. This alone may constitute a disqualifying conflict. *See United States v. Iorizzo,* 786 F.2d 52, 57 (2d Cir.1986) (finding that defense counsel should have been available to testify to dispel any impression that he had been responsible for a government witness's testimony).

Under the ethical standards that a court has a duty to preserve, a lawyer must withdraw as counsel if he "learns or it is obvious that the lawyer ought to be called as a witness on behalf of the client." N.Y. Jud. Law. DR 5–102(A). Accordingly, "[w]hen faced with an attorney as a sworn or unsworn witness, the proper recourse is to disqualify the attorney." *United States v. Kliti,* 156 F.3d 150, 156 (2d Cir.1998). As Eisemann notes, however, it is not certain that he would become a witness.

As was recently observed by a fellow member of this Court, this uncertainty does not end the inquiry.

> "Even if the attorney is not called, however, he can still be disqualified, since

---

**3.** Eisemann has represented Yu as assigned counsel since January 15, 1999, in a prosecution for conspiracy to distribute narcotics. Yu currently awaits sentencing pending a *Fatico* hearing. Despite the length of this representation, Eisemann has suggested that it may be appropriate to relieve him as counsel for Yu in order to address some of the conflict issues that have been caused by his representation of both Gonzalez and Yu. This very suggestion highlights the intractable nature of the conflict and the difficulty in which it places counsel, who is choosing between a client whom he has represented for almost a year and a half and who is presently litigating

sentencing issues through a *Fatico* hearing and a client whom he has represented for approximately a month and who is awaiting trial.

**4.** Eisemann has suggested that his conversation with Yu regarding the stabbing may not have been privileged. Even that view, which the Court regards as preliminary, illustrates the conflict in the concurrent representation of Gonzalez and Yu. While it is in Gonzalez's interest to have a determination that Eisemann's conversation with Yu was not privileged, Yu's interest may be the reverse.

his performance as an advocate can be impaired by his relationship to the events in question. For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination."

... Indeed, proof at trial about a lawyer's conduct may be such that his very presence at counsel table would itself distort the factfinding process by implying to the jury the court's endorsement or condonation of that conduct.

*Rahman,* 861 F.Supp. at 275–76 (quoting *United States v. Locascio,* 6 F.3d 924, 933 (2d Cir.1993)).

The conflicts discussed above are not hypothetical, as has been illustrated by the varying positions Eisemann has taken since this issue arose. That Eisemann has alternatingly offered not to call Yu as a witness, to have the defendant decide alone whether or not to call Yu as a witness, to have independent counsel assigned to determine whether Yu would waive his attorney-client privilege, and to withdraw as counsel for Yu indicates the extent to which he is currently conflicted. Eisemann has only been representing the defendant in this matter for just over five weeks. Furthermore, Eisemann is assigned counsel and the Court previously warned the defendant that as such, he could be removed if the Court found it was necessary. Finally, the Court is not obligated to appoint two trial counsel for Gonzalez in an effort to preserve Eisemann's representation of Gonzalez. Such a "solution" would only unnecessarily complicate matters without eliminating all the problems posed by Eisemann's dual represen-

tation, particularly the possibility that he could become a witness.[5] Accordingly, the Court finds that the interests of justice outweigh any interest the defendant has in being represented by Eisemann in this case.

## CONCLUSION

For the reasons stated, Eisemann is disqualified as the defendant's counsel.

SO ORDERED.

---

5. The second attorney would have to handle not only the examination of Yu, but also in all likelihood both jury addresses and the examination of any witness in a position to contradict Yu. *See Rahman,* 861 F.Supp. at 277 (discussing impact of conflict on jury addresses).