**UNITED STATES of America,**

v.

**Nat SCHLESINGER, Herman Niederman, and Goodmark Industries, Inc., Defendants.**

**No. 02 CR 485(ADS).**

United States District Court,
E.D. New York.

Sept. 20, 2004.

---

Roslynn R. Mauskopf, United States Attorney Eastern District of New York by Robert P. LaRusso, Assistant United States Attorney, Central Islip, NY, for U.S.

Baker & Hostetler LLP by George A. Stamboulitis, Esq., New York City, for the Defendants Nat Schlesinger and Goodmark Industries, Inc.

Stillman & Friedman, P.C. by Paul Shechtman, Esq., New York City, for the Defendant Herman Niederman.

## MEMORANDUM OF ORDER AND DECISION

SPATT, District Judge.

This case involves charges of fraud, among other things. The Government moves to disqualify Attorney Paul Shechtman ("Shechtman" or "counsel") of Stillman & Friedman (the "Firm") from representing defendant Herman Niederman ("Niederman") because of Shechtman's prior representation of co-defendant Nat Schlesinger ("Schlesinger").

## I. BACKGROUND

The superceding indictment ("Indictment") alleges that Schlesinger and Niederman devised and executed a scheme to defraud creditors and various lien and judgment holders of a publicly traded company known as Private Brands ("PB"). The Indictment charges the defendants

with engaging in a series of fraudulent business transactions to give the false appearance to creditors that title to PB's assets had been conveyed to C.C. Calabria ("Calabria") and thereafter to defendant Goodmark Industries ("Goodmark"), and that both were independent entities unrelated to PB. According to the Government, the actual nature of these transactions was to conceal the true ownership of PB's assets. Niederman's alleged participation in the overall scheme involved opening bank accounts and signing letters to PB's creditors as "secretary" of Goodmark to give creditors the impression that PB and Goodmark were unrelated entities by representing that Goodmark had taken over PB's business.

The Indictment alleges that one of the creditors defrauded by Schlesinger's scheme to defraud was the New York State Department of Taxation and Finance ("NYS Tax"). Counts 22–24 of the Indictment allege that, in February 2000, NYS Tax found Schlesinger "a responsible person" of PB and personally assessed him for taxes owed by PB to New York State.

To reverse the tax assessment and contest the finding that he was responsible for PB's unpaid taxes, Schlesinger retained Shechtman and his Firm. As evidenced by correspondence with NYS Tax on behalf of Schlesinger, both Shechtman and his partner James Mitchell ("Mitchell") represented Schlesinger. The Government has obtained five letters to NYS Tax between March 2000 and December 2001 written by Mitchell, and one letter to NYS Tax, dated November 22, 2000, written by Shechtman. In Shechtman's letter, he referred to prior correspondence between Mitchell and NYS Tax, which evinces his familiarity with the history of communications between the parties regarding the assessment. The Shechtman letter referred to Schlesinger as "my client" and commented on the "numerous" phone calls "we" had made to

NYS Tax. The Government contends that the letter indicates that Shechtman was fully apprised of the facts of Schlesinger's case. The Government also claims that, based upon false information provided by Schlesinger, the Firm was able to reverse the assessment. In addition, the Government states that the Firm's submissions to NYS Tax falsely represented that Schlesinger did not have any responsibility or role in the financial or tax related affairs of PB.

The Government states that NYS Tax was one of the lien and judgment holders of PB and that it will prove that NYS Tax is a charged victim of the creditor fraud. In addition, the Government asserts that its evidence will show that Schlesinger provided several NYS Tax judgments to an attorney attempting to negotiate a settlement of a bankruptcy judgment against PB. The Indictment alleges that Schlesinger submitted these "for the purpose of delaying enforcement of the Bankruptcy Judgment against Private Brands and Bali Jewelry until SCHLESINGER could complete the fraudulent transfer of title to the PB Collateral to Calabria." The Government claims that Schlesinger retained the Firm as part of his overall scheme to defraud PB creditors, and that letters written by Shechtman and Mitchell on Schlesinger's behalf were in furtherance of the charged mail fraud conspiracy.

## II. DISCUSSION

### A. The Right to Conflict–Free Counsel

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. However, a defendant's right to be represented by the counsel of his own choice is not absolute. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988);

*United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993). As the Supreme Court explained, "[t]he essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat,* 486 U.S. at 159, 108 S.Ct. 1692.

Included in the Sixth Amendment right to assistance of counsel is the right to be represented by counsel who is free of conflict. *United States v. Schwarz,* 283 F.3d 76, 90 (2d Cir.2002). Thus, while a defendant's choice of counsel is presumptively favored, "such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." *United States v. Jones,* 381 F.3d 114, 119 (2d Cir.2004). Once the district court has been informed of the possibility of conflict of interest, it has a duty to "to investigate the facts and the details of the attorney's interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy,* 25 F.3d 146, 153 (2d Cir.1994).

An attorney has an actual conflict of interest if his "and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action,' or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." *Jones,* at 119 (quoting *United States v. Feyrer,* 333 F.3d 110, 116 (2d Cir.2003)). A potential conflict of interest exists if "the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *United States v. Kliti,* 156 F.3d 150, 153 n. 3 (2d Cir.1998).

If the court determines that counsel has a conflict of interest, it must eliminate it through either disqualification or waiver. *Id.* at 153. Where an actual or severe conflict is so strong that "no ra-

tional defendant would knowingly and intelligently desire the conflicted lawyer's representation," the court is obligated to disqualify the attorney. *Levy,* 25 F.3d at 153. Such conflicts are unwaivable. *Kliti,* 156 F.3d at 153. If a lesser actual or potential conflict exists, a district court may accept the defendant's knowing and intelligent waiver of his right to a non-conflicted lawyer. *United States v. Perez,* 325 F.3d 115, 125–28 (2d Cir.2003). In obtaining a defendant's waiver, a district court follows the procedures outlined in *United States v. Curcio,* 680 F.2d 881, 888–90 (2d Cir.1982). However, if the attorney's conflict jeopardizes the integrity of the judicial proceedings, the district court has "substantial latitude in refusing waivers of conflicts of interest." *Wheat,* 486 U.S. at 163, 108 S.Ct. 1692. With all this said, it is "notoriously hard" for courts to predict, especially at the pretrial stage, what future conflicts might surface during the course of the criminal trial. *Jones,* at 120.

## B. The Government's Grounds for Disqualification

In this case, the Government advances several grounds for the disqualification of Shechtman and his Firm. The Government states that Count 22 of the Indictment charges Schlesinger and Niederman with conspiring to defraud creditors, including NYS Tax, and using the mails to further the unlawful scheme. The Government further asserts that it will prove that Schlesinger's alleged effort to defraud creditors was carried forward by his use of the Firm to reverse the tax assessment imposed by NYS Tax. As a result, the Government contends that Shechtman may become an unsworn witness or possibly a sworn witness because of the Firm's "unwitting" participation in the alleged fraud. In addition, the Government asserts that Shechtman and the Firm's prior represen-

tation of Schlesinger impedes on Shechtman's ability to adequately represent Niederman in this case.

Shechtman counters, among other things, that having been Niederman's attorney for the past eight months, Niederman would be severely prejudiced if disqualification is granted. Shechtman urges this Court to require the Government to explain its theory of admissibility and determine whether the evidence is likely to be received. In addition, he states that Niederman had no role in the alleged scheme to defraud NYS Tax in 2000 and that, therefore, severance of the trial "almost certainly will be granted." Even if severance is not granted, Niederman states that he would have no reason to cross-examine witnesses about the alleged NYS Tax fraud other than to assert that he did not participate in it. Furthermore, Shechtman contends that Schlesinger is prepared to waive any conflict and release him from any ethical obligation that Shechtman might still owe to him. Shechtman also states that any proof of his Firm's involvement could be handled by stipulation or by Mitchell's testimony.

## C. Actual Conflict of Interest

■ An attorney may be disqualified because of his "prior representation of a witness or co-defendant." *United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993). An actual conflict of interest exists when "the attorney's and defendant's interest diverge with respect to a material factual or legal issue or to a course of action." *Schwarz,* 283 F.3d at 91. The Court finds that Shechtman and his Firm have an actual conflict with regard to their representation of Niederman. The Government states that it will show that NYS Tax is a charged victim of the creditor fraud and that Schlesinger provided several NYS Tax judgments to an attorney attempting to negotiate a settlement of a bankruptcy judgment against Private Brands, and, as

alleged in the Indictment, were submitted "for the purpose of delaying enforcement of the Bankruptcy Judgment against Private Brands and Bali Jewelry until SCHLESINGER could complete the fraudulent transfer of title to the PB Collateral to Calabria." The Government further asserts that Shechtman and his Firm are implicated in the criminal activity.

The Court finds that the Government has established an actual conflict in Shechtman and the Firm's representation of Niederman. Shechtman's prior representation of Schlesinger in proceedings involving the underlying facts in several counts in the Indictment provide sufficient support to disqualify him and the Firm. According to the Government, the evidence will show that Niederman was a principal player in the fraudulent scheme to conceal PB's assets from the creditors. The Government therefore contends that Niederman either knew that his name would be used by Schlesinger on other documents necessary to carry out the fraudulent scheme, or reasonably understood that it would occur.

Although it is certainly not clear whether Schlesinger will testify in this case, that possibility must be considered. In that situation, the prior representation of Schlesinger may handicap Shechtman's ability to cross-examine his former client or negatively comment in closing arguments about Schlesinger's testimony. *See United States v. Gotti,* 9 F.Supp.2d 320, 324 (S.D.N.Y.1998) (explaining that the attorney-client relationship with a witness or co-defendant can give rise to a continuing obligation of confidentiality that may be breached when confidences are exploited during cross-examination or an ineffective cross-examination may occur if prior confidences are respected). By virtue of Shechtman and his Firm's ongoing duty of loyalty to Schlesinger, they would be un-

able to shift blame from Niederman to Schlesinger, which would constrain their representation of Niederman in this case.

Even if Schlesinger waived the conflict and released Shechtman from any ethical obligation that Shechtman might still owe him, remaining counsel to Niederman will still place him and his Firm in a position with dual agendas. The Government has asserted that it will show that Schlesinger retained Shechtman and his Firm as part of his overall scheme to defraud creditors and that Schlesinger provided them with fraudulent documents. Therefore, Shechtman may have a personal interest in protecting his and the Firm's reputation based on their involvement with NYS Tax. As a result, this may influence Shechtman to pursue certain representational tactics that favor his own personal interests or that of his Firm, impeding his ability to effectively represent Niederman.

In addition, Shechtman may have an incentive to minimize his own involvement in the alleged criminal activity so that he or other members of his Firm are not called as actual witnesses in this case. When a lawyer is in a position to be a witness, a court has an independent responsibility to preserve the ethical standards that may require an attorney to withdraw from representing a client when that lawyer is in a position to be a witness. *See, e.g.,* N.Y. Jud. Law DR 5–102(A) (McKinney 1993).

> **Even if the attorney is not called, however, he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question. For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination.**

*Locascio,* 6 F.3d at 933. "Indeed, proof at trial about a lawyer's conduct may be such that his very presence at counsel table would itself distort the factfinding process by implying to the jury the court's endorsement or condonation of that conduct." *United States v. Rahman,* 861 F.Supp. 266, 276 (S.D.N.Y.1994) (citing *United States v. Castellano,* 610 F.Supp. 1151, 1167 (S.D.N.Y.1985)).

The Court therefore concludes that no rational defendant in Niederman's position would knowingly and intelligently desire to be represented by Shechtman and his Firm based on the serious conflicts of interest in this case. In addition, even assuming that the conflict is only a lesser actual or potential conflict and that Niederman would want to waive such a conflict, the Court would reject such a waiver, as the conflicts would cast doubt on the integrity of the judicial process. Accordingly, the Government's motion to disqualify Shechtman and his Firm is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the Government's motion to disqualify Paul Shechtman, Esq. of Stillman & Friedman and the Firm from continuing to represent the defendant Herman Niederman is **GRANTED;** and it is further

**ORDERED,** that Niederman is directed to retain new counsel within 30 days from the date of this Order.

**SO ORDERED.**