UNITED STATES of America, Appellee,

v.

Cortland Bay FULTON, also known as Tairu Owolabi Alabi, Defendant–Appellant.

Cortland Bay FULTON, Petitioner–Appellant,

v.

WARDEN, RAY BROOK CORRECTIONAL FACILITY, Respondent–Appellee.

Nos. 642, 897, Dockets 91–1048, 92–2105.

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1993.

Decided Sept. 22, 1993.

Lawrence D. Gerzog, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty., E.D.N.Y., and David C. James, Asst. U.S. Atty., of counsel) for appellee.

Mark L. Freyberg, New York City, for defendant-appellant.

Before: KEARSE, WINTER and WALKER, Circuit Judges.

WALKER, Circuit Judge:

In the middle of Cortland Bay Fulton's trial for conspiracy to possess and import heroin, the government informed the court in an *ex parte* conference that the government witness on the stand previously stated that he had once imported heroin for Fulton's trial counsel. In this appeal, we must decide whether this allegation created a conflict of interest for Fulton's attorney giving rise to a *per se* violation of Fulton's Sixth Amendment right to effective assistance of counsel, in accordance with *Solina v. United States*, 709 F.2d 160 (2d Cir.1983) (Friendly, J.).

On December 14, 1990, following a jury trial, judgment was entered in the United States District Court for the Eastern District of New York, (Sifton, *J.*), convicting Fulton of conspiring to possess with intent to distribute more than one hundred grams of heroin, in violation of 21 U.S.C. §§ 841 and 846, and aiding and abetting the importation of more than one hundred grams of heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(2)(A), and 18 U.S.C. § 2. The district court sentenced Fulton to two concurrent terms of 63 months imprisonment, two concurrent terms of three years supervised release, and imposed a mandatory $50 special

assessment on each count. Fulton is currently serving his sentence.

Fulton now appeals from his judgment of conviction and the denial of a motion pursuant to 28 U.S.C. § 2255 to vacate the conviction and order a new trial on the grounds that his Sixth Amendment rights were violated because his counsel had an actual conflict of interest, and his waiver of this conflict was ineffective. For the reasons given below, we find that the defendant's Sixth Amendment right to the effective assistance of counsel was violated.

## BACKGROUND

According to the evidence at trial, Fulton and three co-defendants, Samuel Lateju, Rachelle Turner, and Bilikisu Fuja, participated in a scheme to smuggle heroin from Nigeria to New York. Turner arrived at Kennedy Airport on December 13, 1989 in possession of 1.3 kilograms of heroin. She was arrested and agreed to cooperate with the government. She implicated Lateju, who was then arrested and also agreed to cooperate. In a tape-recorded conversation, Turner and Lateju called Fuja and Fulton to arrange for a meeting at a motel to exchange the heroin. When Fulton arrived at the motel, he was arrested.

At trial, Fulton was represented by two attorneys, one of whom acted as lead trial counsel with the other assisting. When cross-examining government witness Lateju, Fulton's lead trial counsel asked him about a conversation Lateju had with lead trial counsel at the Metropolitan Correctional Center in New York after Lateju was arrested. The government objected and sought an *ex parte* sidebar conference, at which the government related to the district court that Lateju "weeks ago called up the DEA agent and advised him with respect to a previous shipment of heroin he brought into the United States, I believe it's 200 grams, that this defense attorney received a portion of the heroin. This weekend, when we were preparing this [witness] for trial, [Lateju] also indicated—further indicated to us that the defense counsel was—he had information that he was involved in heroin trafficking on his own." The government explained that "[t]he DEA and Customs are beginning inquiry. We don't know if it's true or not."

After a recess, at a second *ex parte* sidebar, the district judge told the government that he saw "no alternative under the circumstances but to disclose this to the defense lawyer and to his client in order for the client to consider whether the lawyer's conduct will be influenced by the accusation that this witness is making against him." The district judge continued, "it will be necessary for [the defendant] to give up the right to cross-examine the witness on the subject since—if he is unwilling to waive the conflict, then he needs a new lawyer. If he is unwilling to waive the right of cross-examination, he needs to do so." The district judge stated that if the investigation was of such importance that the government objected to the disclosure of the allegation, the government might have to choose between pursuing Fulton or his attorney. The government replied that "disclosing it would obviously put the witness, Mr. Lateju, in—I believe in great, great, great risk." The district judge recommended that the government "get him protection."

The district judge told the government that he was "going to disclose that to the lawyer and the defendant and ask the defendant to consider it and see whether he wants a new attorney who, given the fact that this attorney—his attention may be distracted, given the fact that this attorney cannot cross-examine him on this subject." The government requested that the district judge "at least sanitize [the allegation] to some extent, either as to the source or merely just leave it to the fact that there is an allegation?" The district judge replied, "[w]ell, he has to know that it is a subject that this defendant, if he didn't have this lawyer, would have the right to cross-examine this witness.... [A]lthough, I don't have to suggest that's the only source of the information."

The district court stated, "[lead trial counsel], could you come up with your client. I'll ask the other attorney to not come up given the nature of what we're discussing." The district judge explained that he had a serious subject to discuss: "[i]t appears that this

witness who is on the stand ... has advised the agents in this case that on a prior occasion he brought drugs into the country and that these drugs were either delivered to or belonged to [lead trial counsel], your attorney."

The district judge told Fulton that "in a situation like this you have to consider whether [lead trial counsel] can continue to represent you." Regardless of "the truth of this statement that Mr. Lateju has apparently made, the very fact ... the accusation is made against your attorney, makes your attorney personally involved in this trial in a way that is different from his professional involvement as a lawyer who has only your interests to be concerned with." The district judge stated that lead trial counsel "[n]ow ... must be concerned not only with your interests but with his personal reputation, and more than that, the potential that he himself might be accused of a crime."

The district judge explained that lead trial counsel could not "act both as a witness and a lawyer" and, therefore, that lead trial counsel could not "take the stand and testify to say that's not true that he never did bring drugs to me." The district judge stated that "there is a possibility of a conflict but not an actual conflict.... [Lead trial counsel], having been accused by this witness individually, may be to some degree distracted from doing his best job representing you."

The district judge advised Fulton to think about these matters and discuss them with lead trial counsel. He told Fulton that "[i]f you understand what we're talking about and are prepared to waive the potential conflicts I foresee, that I have been talking about, then we can go ahead." He reiterated that lead trial counsel would be affected by his concern over the witness's statement and that lead trial counsel would "be unable to cross-examine the witness on the truth of this statement that on a prior trip the witness brought him heroin."

When lead trial counsel asked to respond, the district judge responded that "in these circumstances anything you say on this subject could be used against you[,]" and he "assume[d] if you were given an opportunity to respond to this you would deny it." The

district judge then suggested that "[s]ince there are two counsel here, it might be well for the other attorney to get involved so Mr. Alabi [Fulton] can have his perspective on it as well as yours."

After the recess, at sidebar, the district judge asked, "have you determined—has Mr. Alabi [Fulton] determined what to do?" The defendant began to answer, but the district judge interrupted and told him that he "[didn't] have to speak." He asked the lawyers how "you decided to proceed?" Lead trial counsel, the attorney in question, responded that "[h]e has decided to go ahead with me...." The court stated, "[a]nd you understand that that means that, first of all, [lead trial counsel] will be to some extent distracted by this and, secondly, that he will not be able to cross-examine the witness about this; you understand that?" Fulton replied, "yes, your Honor."

When lead trial counsel requested that the government not "bring this up," the district court stated that "this is not going to be explored at all by the government but that they were concerned that this was information they were privy to which I should be aware of and I've determined that you ought to be aware of it." Lead trial counsel, assisted by co-counsel, continued to represent Fulton throughout the trial.

After his conviction and sentencing, Fulton filed a § 2255 petition alleging that he had been deprived of his Sixth Amendment right to effective assistance of counsel because his counsel had an actual conflict of interest, or alternatively, a potential conflict of interest which affected his representation and caused Fulton prejudice at trial. Fulton also contended that his waiver was invalid because the conflict at issue was not waivable, and that his waiver was made with insufficient knowledge.

On January 16, 1992, the court denied the § 2255 petition without a hearing. The district court held that Fulton failed to demonstrate that lead trial counsel had an actual conflict of interest, and, further, that Fulton knowingly waived his right to conflict-free counsel. Finally, the district court held that Fulton had failed to demonstrate that he had

been prejudiced by lead trial counsel's representation.

This appeal followed.

## DISCUSSION

Fulton argues that his counsel had an actual conflict of interest that was a *per se* violation of his Sixth Amendment right to effective assistance of counsel in accordance with our decision in *Solina*. Thus, we must decide whether an allegation by a government witness that the defendant's attorney engaged in the same or closely related criminal conduct for which the defendant is on trial results in a potential or actual conflict of interest; if the latter, whether such an allegation requires invocation of our *per se* rule; and finally, whether Fulton waived his Sixth Amendment rights in this case.

### I. *Defense Counsel's Conflict of Interest*

■■■ A defendant asserting ineffective assistance of counsel typically bears a heavy burden. Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), if the defendant establishes the mere possibility of a conflict of interest, he or she must prove prejudice, that is, that counsel's performance fell below "an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064, and "the reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068. However, prejudice is presumed when a defendant establishes that an attorney had an actual conflict of interest that adversely affected the lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *United States v. Jones*, 900 F.2d 512 (2d Cir.), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990); *United States v. Iorizzo*, 786 F.2d 52, 58 (2d Cir.1986) (prejudice is presumed when defendant establishes an actual conflict of interest and a "lapse in representation" as required by *Cuyler*, 446 U.S. at 349, 100 S.Ct. at 1718–19).

### A. The Nature of the Conflict

Frequently, the conflict issue arises in cases where an attorney represents more than one defendant or where, although representing one defendant, her fee is being paid by a co-defendant. In the multiple representation context, an attorney has an actual, as opposed to a potential, conflict of interest when "during the course of the representation, the defendants' interests ... diverge with respect to a material factual or legal issue or to a course of action." *Cuyler*, 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3.

A situation in which the attorney's own interests diverge from those of the client presents the same core problem presented in the multiple representation cases: the attorney's fealty to the client is compromised. Therefore, courts have held that the presumption of prejudice set forth in *Cuyler* applies as well to situations where the personal interests of the attorney and the interests of the client are in actual conflict. *See, e.g. United States v. McLain*, 823 F.2d 1457, 1463–64 (11th Cir.1987) (actual conflict when counsel, unbeknownst to defendant, had been under investigation for bribery); *United States v. Ellison*, 798 F.2d 1102, 1106–08 (7th Cir.1986) (actual conflict between lawyer and client when pursuit of client's interests would lead to evidence of attorney's malpractice).

■■■ It is well-settled in this circuit that an actual conflict of interest exists when an attorney engages in wrongful conduct related to the charge for which the client is on trial. *United States v. Jones*, 900 F.2d 512 (2d Cir.), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990). In *United States v. Cancilla*, 725 F.2d 867 (2d Cir.1984), we held that there was an actual conflict of interest when the government stipulated that the defense counsel had engaged in a scheme to collect on fraudulent insurance claims with someone connected to the activities for which the defendant had been convicted. 725 F.2d at 870. In the case at bar, the government did not stipulate that Fulton's attorney engaged in criminal conduct since the matter was still under investigation. Rather, a government witness implicated Fulton's attorney. In similar circumstances, the Ninth Circuit held, citing *Cancilla*, that when "an

attorney is accused of crimes similar or related to those of his client, an actual conflict exists because the potential for diminished effectiveness in representation is so great." *Mannhalt v. Reed,* 847 F.2d 576, 581 (9th Cir.1988), *citing Cancilla,* 725 F.2d at 870. *But cf., Cerro v. United States,* 872 F.2d 780, 785 (7th Cir.1989) (holding that attorney accused of narcotics activity did not have an actual conflict of interest when testimony only indirectly implicated him in criminal activity).

When a government witness alleges that the defendant's counsel engaged in criminal conduct related to the charges for which the defendant is on trial, it creates one of two actual conflicts. First, if the allegations are true, concerns we expressed in *Cancilla* arise: the attorney may fear that a spirited defense could uncover convincing evidence of the attorney's guilt or provoke the government into action against the attorney. Moreover, the attorney is not in a position to give unbiased advice to the client about such matters as whether or not to testify or to plead guilty and cooperate since such testimony or cooperation from the defendant may unearth evidence against the attorney. *See Cancilla,* 725 F.2d at 870; *see also Mannhalt,* 847 F.2d at 581.

Second, even if the attorney is demonstrably innocent and the government witness's allegations are plainly false, the defense is impaired because vital cross-examination becomes unavailable to the defendant. Ordinarily, a witness's blatantly false allegations provide a rich source for cross-examination designed to cast doubt on the witness's credibility; but, when the allegations are against the defendant's attorney, this source cannot be tapped. An attorney cannot act both as advocate for his client and a witness on his client's behalf. N.Y.Jud.Law, DR 5–102(A) (McKinney 1993). And, in questioning a witness concerning his allegations against the attorney, the attorney effectively becomes an unsworn witness. *See, e.g., Iorizzo,* 786 F.2d at 57 (trial counsel had actual conflict of interest when he had represented government's key witness in prior case and, therefore, he could not impeach the witness's credibility with respect to the substance of the prior testimony); *United States v. McKeon,* 738 F.2d 26, 34–35 (2d Cir.1984) (counsel properly disqualified under Rule 5–102(A) if witness might testify regarding material conversation with counsel).

The government argues, citing *Jones,* 900 F.2d at 519, that before there can be an actual conflict based upon a witness's allegations of criminal wrongdoing by defendant's attorney the veracity of the claim must be established independently. In *Jones,* the prosecutor asserted at sidebar that the defendant had testified in contradiction to a proffer letter written by her defense attorney, and therefore, the attorney was in violation of Model Code of Professional Responsibility DR 7–102 and EC 7–26, which prohibit attorneys from using testimony they know to be false. EC 7–26, N.Y.Jud.Law App. (McKinney 1993); *see also* DR 7–102, N.Y.Jud.Law App. (McKinney 1993). By comparing the proffer letter to the testimony, the district judge determined that there had been no such contradiction, and the attorney was free to defend his client without restraint. *Jones,* 900 F.2d at 519. We held that a prosecutor's baseless threat of disciplinary sanctions against the attorney in the heat of battle, in the absence of "some foundation," does not affect the attorney's ability to put on a vigorous defense. *Id.*

This case is very different from *Jones.* Here the allegations were by a witness who was testifying against the defendant at trial. Whether the allegations created an actual conflict does not turn on whether they are true or false, or with or without "some foundation." However viewed, the allegations present an actual conflict. Lateju told the government that lead trial counsel received a portion of a shipment of heroin that Lateju brought into the United States, and also that he had information that lead trial counsel was involved in heroin trafficking on his own. Either lead trial counsel was involved with Fulton's alleged co-conspirator in a crime closely related to that for which Fulton was on trial, or the allegations were false, and lead trial counsel was precluded from challenging Lateju's credibility based on the falsity of the accusations. In either circumstance, Fulton's and lead trial counsel's inter-

ests diverged during the trial, and, therefore, lead trial counsel had an actual conflict of interest. *See Cuyler,* 446 U.S. at 356 n. 3, 100 S.Ct. at 1722 n. 3.

### B. Applicability of the *Per Se* Rule

If the *per se* rule of this circuit applies in this case, to establish a Sixth Amendment violation, Fulton need not even prove that the conflict adversely affected the lawyer's performance as required by *Cuyler. Strouse v. Leonardo,* 928 F.2d 548, 555 (2d Cir.1991). Thus, we now consider whether lead trial counsel's continued representation of Fulton in the face of Lateju's allegation that lead trial counsel engaged in the same or closely related criminal conduct for which Fulton is standing trial resulted in a *per se* violation of the Sixth Amendment. In this circuit, we have held that there is an "actual or constructive denial of the assistance of counsel," *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, and, as such, a *per se* violation of the Sixth Amendment in two limited circumstances: where defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes. *See, e.g., Bellamy v. Cogdell,* 974 F.2d 302, 306 (2d Cir.1992) (in banc); *United States v. Novak,* 903 F.2d 883, 890 (2d Cir.1990) ("unlicensed" counsel); *United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984) (implicated in crimes); *Solina v. United States,* 709 F.2d 160, 168–69 (2d Cir.1983) ("unlicensed" counsel).

The *per se* rule applies when an attorney is implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that a " 'vigorous defense should lead the prosecutor or the trial judge to discover' " evidence of the attorney's " 'own wrongdoing.' " *Bellamy,* 974 F.2d at 307 (quoting *Solina,* 709 F.2d at 164). Of course, the *per se* rule does not apply any time a court learns that an attorney may have committed a crime; the attorney's alleged criminal activity must be sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised. In *Cancilla,* the court found that the *per se* rule applied because of the "similarity of counsel's criminal activities to Cancilla's schemes and the link between them." 725 F.2d at 870. The link in that case was the fact that Cancilla's counsel had committed crimes with Cancilla's possible co-conspirator. Similarly, in this case, if Lateju's allegations are treated as true for our Sixth Amendment analysis, both Fulton and lead trial counsel allegedly imported heroin in concert with Lateju. While we cannot say in the abstract where the line will be drawn that determines whether the attorney's criminal conduct is related to the charged crime, it is plain to us that this case crosses it.

Therefore, if Lateju's allegations were true, the *per se* rule would apply. If the accusations were false, the attorney would also have an actual conflict since the attorney could not challenge the false statements for impeachment purposes, but the conflict would not invoke the *per se* rule, and, thus, the *Cuyler* standard does apply. Without a trial, a court obviously cannot know whether such allegations are true. Thus, we must decide whether the circumstances here are such that the allegations should be treated as "true" for purposes of constitutional analysis, thereby invoking the *per se* rule.

In making this determination, we are mindful that the Sixth Amendment right to counsel is "necessary to insure fundamental human rights of life and liberty." *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1937). "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U.Chi.L.Rev. 142, 152 (1970) (quoting Schaefer, *Federalism and State Criminal Trials,* 70 Harv.L.Rev. 1, 8 (1956)). Accordingly, we believe that, where there is a reasonable possibility that a witness's allegations are true, the district court, and this court, must assume the worst.

When a government witness makes allegations that he has direct knowledge of wrongdoing, there is necessarily a reasonable possibility that the allegations are true since the government thinks well enough of the witness's credibility that it asks the jury to find the defendant guilty beyond a reasonable

doubt based, in part, upon the witness's testimony. Moreover, when the witness has agreed to cooperate with the government as part of a plea agreement, the witness has an incentive to tell the truth, since any lie could be exposed giving rise to a violation of the plea agreement with negative consequences for the witness.

The government argues that a witness's allegations should not be credited when a defendant asks the jury to disbelieve the witness. This argument had some appeal for the district court; it has none for us. The fact that a defendant's trial strategy includes an unsuccessful attack on a government witness's credibility does not undermine the weight to be given the allegations in determining whether a defendant's Sixth Amendment rights were violated.

In short, when a government witness alleges that he has direct knowledge of criminal conduct by defense counsel, for purposes of constitutional analysis, we must treat such allegations as though they are credible. Accordingly, assuming the worst, Lateju's allegations that lead trial counsel was engaged with him in heroin trafficking created an actual conflict of interest of the sort that requires application of the *per se* rule, and, therefore, Fulton need not prove that his representation was adversely affected to establish a Sixth Amendment violation.

### II. *Waiver*

■ Fulton argues that his waiver is invalid because the district court abused his discretion in not disqualifying trial counsel after the allegations were aired and the conflict became apparent. We agree, although we certainly appreciate that the able district judge in this case was caught by surprise—a situation the government should have prevented by the simple expedient of informing the district judge of the allegations in advance of trial.

"The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *United States v. Cronic,* 466 U.S. 648, 655, 104 S.Ct. 2039, 2044–45, 80 L.Ed.2d 657 (1984) (quoting

*Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975)). When one side is tainted by a conflict of interest, that "very premise" is called into question.

■ As the Supreme Court stated in *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988), while a defendant generally may waive his Sixth Amendment right to an unconflicted attorney, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Moreover, federal courts have "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them." *Id.* at 160, 108 S.Ct. at 1698. When a lawyer's conflict, actual or potential, may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver. *Id.* at 162–63, 108 S.Ct. at 1698–99; *see United States v. Arrington,* 867 F.2d 122, 129 (2d Cir.1989) (district court refused waiver and disqualified attorney when government informed the court of an alleged plot to silence witnesses and the possible involvement of co-defendant's counsel); *United States v. Snyder,* 707 F.2d 139 (5th Cir.1983) (court disqualified attorney who was an indicted co-conspirator).

In this case, Fulton's co-conspirator, a government witness, claimed to have joined forces in heroin importation, for which Fulton was on trial, with Fulton's attorney. As we held above, the conflict in this case resulted in inadequate representation of Fulton *per se.* It thus undermined both the defendant's Sixth Amendment right to effective assistance of counsel, and the federal court's independent interest in the integrity of a legal proceeding and the assurance of a just verdict. *See Wheat,* 486 U.S. at 160, 108 S.Ct. at 1697–98.

Where a government witness implicates defense counsel in a related crime, the resultant conflict so permeates the defense that no meaningful waiver can be obtained. In such a case, we must assume that counsel's fear of, and desire to avoid, criminal charges, or even the reputational damage from an unfounded but ostensibly plausible accusation, will affect virtually every aspect of his or her representation of the defendant. At the pre-trial stage, counsel's ability to advise the defendant as to whether he or she should seek to cooperate with the government is impaired. Cooperation almost always entails a promise to answer truthfully all questions put by the government. Because the government knows of the allegations against defense counsel, questions concerning those allegations seem inevitable, and counsel may have good reason to be apprehensive about what the client knows or has heard from co-conspirators. In such circumstances, counsel is hardly an appropriate negotiator of a plea and cooperation agreement. Counsel's judgments about potential defense strategies may be affected by the fear that evidence concerning counsel's involvement might come out. The cross-examination of the witness who implicated counsel will be affected (because counsel is also in effect a witness) but so too may the cross-examination of other witnesses who could provide corroborating evidence. Advice as to whether the defendant should take the stand may be affected by the fear or knowledge that the defendant knows of counsel's criminal activities. Finally, the government's precise knowledge of the conflict may affect *its* conduct of the trial.

Given the breadth and depth of this kind of conflict, we are unable to see how a meaningful waiver can be obtained. The conflict here involves a bias arising out of counsel's powerful self-interest in avoiding criminal charges or reputational damage and is thus of a different character than other conflicts. For example, where a conflict requires counsel to forgo specific questions in cross-examination of a witness, as in *Iorizzo,* or in the presentation of a particular defense as in *Williams v. Meachum,* 948 F.2d 863, 867 (2d Cir.1991) (defendant knowingly waived right to conflict-free counsel and agreed not to present "lookalike" defense), a defendant can be advised of the particular alteration in the conduct of the trial caused by the conflict. The defendant can then seek the legal advice of independent counsel and make an informed judgment that balances the alteration in the trial strategy against the perceived effect of having to get a new and perhaps less effective defense counsel. Even where the conflict is in the common representation of co-defendants who might mount independent defenses, the co-defendants can be advised by independent counsel of the dangers and merits of sticking together, or putting up individual defenses that might conflict, or of one defendant's cooperating with the government. The conflicted counsel is able, if the defendants so opt, to pursue a common, rather than individual, defense aggressively and to give unbiased advice to each defendant. In such cases, a decision to continue to be represented by the conflicted counsel is not irrational.

The danger arising from representation by a counsel who has been implicated in related criminal activity by a government witness is of a different order of magnitude, however. Advice as well as advocacy is permeated by counsel's self-interest, and no rational defendant would knowingly and intelligently be represented by a lawyer whose conduct was guided largely by a desire for self-preservation.

We therefore conclude that the kind of conflict that has arisen in the instant matter is not subject to a meaningful waiver by the defendant. We trust the government will in future cases immediately inform the court of the existence of such a conflict once it becomes aware of it.

■ Of course, the foregoing considerations do not apply if the allegations are clearly false. Thus, if a district court holds a full hearing and can definitively rule out the possibility that the allegations are true, a meaningful waiver is possible since the falsely accused attorney is conflicted only to the extent that she cannot cross-examine the witness regarding the false allegations. Such a conflict is a discreet one that closely resembles the conflict in *Iorizzo.* In such a situation, unlike that presented here, a district

**614**

court following the procedures set forth in *United States v. Curcio,* 680 F.2d 881, 888–90 (2d Cir.1982), may obtain a valid waiver.

We recognize that district courts have broad latitude in making a decision whether to disqualify a defendant's chosen counsel. *Wheat,* 486 U.S. at 163, 108 S.Ct. at 1699. We are also mindful that situations of attorney conflict create a dilemma for trial judges: if the judge disqualifies the attorney, the defendant may argue that he was unfairly denied the attorney of his choice; if the judge fails to so disqualify the attorney, the defendant may still contend that he was denied effective assistance of counsel. Nonetheless, since Fulton's attorney was implicated by the government's witness in the same criminal conduct as the defendant and no determination was made that these allegations were false, the gravity of the situation required the district court to disqualify the conflicted attorney and to reject the proffer of a waiver. *Cf. Government of Virgin Islands v. Zepp,* 748 F.2d 125, 136 (3rd Cir. 1984) (when defense counsel had independent personal information regarding client's charge and faced potential liability for those charges, his actual conflict of interest "required withdrawal of trial counsel or disqualification by the court"). When a conflict of this nature is presented, disqualification will nearly always be the safer course given the difficulty of obtaining a knowing waiver where, in the midst of the trial, all consequences of the conflict can be only dimly perceived. Accordingly, we conclude that the district court abused its discretion in failing to disqualify trial counsel and in accepting the proffer of waiver.

## CONCLUSION

The judgment of the district court and the denial of the § 2255 petition are reversed and the case is remanded for a new trial.