[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2001
THOMAS K. KAHN
CLERK

_____

No. 99-11287

_____

D.C. Docket No. 97-00064-CIV-FTM-17D

JOE HARRY PEGG,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 12, 2001)**

Before CARNES and RONEY, Circuit Judges, and ALAIMO\*, District Judge.

RONEY, Circuit Judge:

_____

\* Honorable Anthony A. Alaimo, U.S. District Judge for the Southern District of Georgia, sitting by designation.

Defendant Joe Harry Pegg was convicted on his plea of guilty to one count of conspiracy to import marijuana in violation of 21 U.S.C. § 963, and given a 360-month sentence. He appeals the denial of his 28 U.S.C. § 2255 collateral attack on that conviction with a single issue: the district court erred in not letting him withdraw his guilty plea, either before or after sentencing, on the ground that his attorney had a conflict of interest that deprived him of his constitutional right to effective assistance of counsel. After a four-day evidentiary hearing, the district court determined that, although one of his attorneys did indeed have a conflict of interest in Pegg's going to trial, the conflict of interest of that attorney did not deprive Pegg of effective assistance of counsel. *See United States v. Pegg,* 49 F.Supp. 2d 1322 (M.D. Fla. 1999). That finding being neither clearly erroneous nor contrary to law, we affirm.

1. The Facts Concerning the Guilty Plea.

The facts of this case unfolded over a sixteen-year period. Pegg became acquainted with Washington, D.C. attorney James E. Sharp in 1981 when Sharp represented Pegg in a joint federal and state marijuana prosecution. Pegg and Sharp became good friends thereafter, and Sharp continued to represent Pegg on and off through their friendship. In March 1994, a federal grand jury in Tampa, Florida returned the indictment that is the subject of this appeal. Pegg was charged as one of

2

several individuals who conspired to import marijuana into the United States in 1988 and 1989. Pegg asked Sharp and Tom Lankford, Sharp's law partner, to represent him in the matter, and both Sharp and Lankford agreed. Sharp engaged John Fitzgibbons, a Tampa attorney, to be local counsel for Pegg in the case. Cynthia Collazo, the Assistant United States Attorney ("AUSA") assigned to prosecute Pegg's case, frequently discussed the possibility of a plea agreement with all three of Pegg's attorneys. They also discussed the likelihood that Pegg could receive a reduced sentence if he entered into a plea agreement and cooperated with the government.

In September 1994, AUSA Collazo was contacted by the attorney for Reggie Baxter, a co-conspirator of Pegg's who became a government witness. Baxter's attorney explained to AUSA Collazo that Sharp may have had privileged conversations with Baxter that would cause Sharp a conflict of interest in representing Pegg. AUSA Collazo instructed a federal agent to interview Baxter and also sent a letter to Sharp and Lankford alerting them that Sharp's contact with Baxter might have caused a conflict of interest. Sharp and Lankford denied the existence of any conflict of interest. AUSA Collazo then interviewed Baxter at the federal lock-up facility. In unsworn statements, Baxter told AUSA Collazo that shortly after he had been arrested in 1992 for participating in the marijuana importation conspiracy charged in the instant case, Sharp had met with him and arranged for Pegg to pay a portion of

3

Baxter's legal fees. Baxter then stated that Pegg had retained attorney Dick Hibey to represent Baxter in the case. Baxter further claimed that Sharp and Hibey helped him concoct a false story to help exculpate Pegg.

AUSA Collazo expressed concern that Baxter's allegations regarding Sharp would come up at trial and affect Sharp's ability to represent Pegg. AUSA Collazo notified Sharp, Lankford, and Fitzgibbons that they should alert the district court of the potential conflict. Fitzgibbons told AUSA Collazo that even if Sharp was disqualified from representing Pegg, he could try the case and win. On November 17, 1994, AUSA Collazo prepared a motion to disqualify Sharp and Lankford. When Sharp and Lankford received the motion for disqualification, they, along with Fitzgibbons, were preparing to go to trial and did not intend to enter a guilty plea. Pegg's attorneys collectively discussed the conflict issue and decided that, in the event Sharp ended up having to testify at trial, Fitzgibbons would assume the role of lead attorney in the case. The attorneys discussed with Pegg the nature of Sharp's conflict, and the possible consequences of Sharp continuing to serve as his counsel, and the possibility that Sharp may need to disqualify himself from the case. Pegg begged Sharp not to withdraw from the case, saying "don't abandon me."

On November 28, 1994, Pegg, Sharp, Lankford, and Fitzgibbons appeared in court prepared to argue the government's disqualification motion and other pretrial

4

motions. Unexpectedly, Bernie Getchman, another co-defendant in the case whose counsel had previously advised Pegg's attorneys that he was definitely going to trial, pled guilty to all the charges in the indictment. During his plea colloquy, Getchman testified that Pegg had hired him to direct, organize, and control the marijuana importation and that he had done so at Pegg's direction. The district court granted the parties a continuance until the following day to attempt to negotiate a plea in the case.

AUSA Collazo, Sharp, and Lankford met and agreed that Pegg should submit to an interview by a Drug Enforcement Agency ("DEA") agent to see if Pegg had any information that would be helpful to the government. The DEA agent told Pegg that if he cooperated with the government, the government would likely move to reduce his sentence below that required by the sentencing guidelines. In Pegg's presence, Fitzgibbons, an experienced federal trial attorney in Tampa, suggested that Pegg was likely to get a good deal at sentencing, predicting that the sentencing judge was likely to sentence him to time served, if he entered a guilty plea, turned over monetary assets, and cooperated in interviews with the DEA.

Pegg's attorneys negotiated a written plea agreement with the government, which they brought to Pegg that evening. The three lawyers collectively decided that it was in Pegg's best interest to plead guilty, and Pegg agreed. During the plea colloquy, Pegg appeared calm and coherent and never raised any issue regarding

Sharp's conflict of interest. The district court qualified the plea and went through a few questions that were meant to show Pegg's waiver of Sharp's conflict of interest.

Pegg was not sentenced until fifteen months after he had entered his guilty plea. Fitzgibbons represented Pegg during the sentencing hearing on February 16, 1996. Prior to sentencing, Pegg was afforded several opportunities to cooperate with the government. The interviewing DEA agent noted, however, that Pegg had not been truthful in the interviews. Because Pegg had not complied with the terms of the plea agreement to date, Fitzgibbons did not want to proceed with sentencing that day and requested a continuance. Once Pegg realized that the government had not filed a motion for downward departure from the sentencing guidelines, Pegg told Fitzgibbons that he wanted to withdraw his plea. The district court denied Pegg's request.

## 2. The Standard For Relief For Conflict of Interest.

To obtain relief on a case of this kind, a defendant must show *first,* that his attorney had an actual conflict of interest, and *second,* that the conflict adversely affected counsel's performance. *See Freund v. Butterworth*, 165 F.3d 839, 858 (11th Cir. 1999). In order to establish a violation of the Sixth Amendment, a defendant "must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1981); *see also Freund,* 165 F.3d at 858. A § 2255 petitioner must show "'inconsistent interests and must

6

demonstrate that the attorney made a choice between possible alternative courses of action. . . .'" *McConico v. Alabama*, 919 F.2d 1543, 1546 (11th Cir. 1990) (quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1987)).

### a. The Attorney's Conflict of Interest.

As to the first prong of the showing Pegg had to make, the district court found and the government does not deny that Sharp labored under an actual conflict of interest created by co-conspirator Baxter's allegations that Sharp had engaged in unethical and criminal activity in connection with his representation of Pegg.

### b. No Adverse Effect on Assistance of Counsel and the Guilty Plea.

As to the second prong, even if an actual conflict of interest exists, there must be proof that the conflict adversely affected counsel's performance in order to rise to the level of a Sixth Amendment violation. *See United States v. Buenoano*, 74 F.3d 1078, 1086 (11th Cir. 1996) ("In assessing whether an actual conflict adversely affected counsel's representation, '[a] petitioner need not show that the result of the trial would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance.'" (quoting *McConico*, 919 F.2d at 1548)).

To prove adverse effect, a habeas corpus petitioner must show: (1) the existence of a plausible alternative defense strategy or tactic that might have been

7

pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense. *See Freund*, 165 F.3d at 860 (holding that a petitioner must establish that the alternative defense strategy was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests); *see also Burden v. Zant*, 24 F.3d 1298, 1305 (11th Cir. 1994). If there is a guilty plea involved, this Court looks at whether the attorney's actual conflict adversely affected the defendant's decision to plead guilty. *See LoConte v. Dugger*, 847 F.2d 745, 755 (11th Cir. 1988).

In a four-day evidentiary hearing on the instant § 2255 motion, the district court heard extensive testimony from Pegg's attorneys and others involved in the events leading up to the entry of Pegg's guilty plea. The record shows that Pegg had the advice of several attorneys and that the plan under which Pegg was to enter his guilty plea was devised by Fitzgibbons, an attorney who did not act under any conflict of interest. During his testimony Sharp denied Baxter's incriminating allegations that he had concocted a plan to fabricate a story to the DEA. Even though Sharp acknowledged that he had briefly met with Baxter, Sharp testified that he refused to discuss the case with Baxter further once Baxter conveyed to him that he had information that incriminated Pegg. Sharp also acknowledged that he and Pegg had had a personal and professional relationship for several years and that Pegg had

8

begged Sharp to remain as his counsel in this case. Sharp admitted that Baxter's allegations upset him, that he was concerned about his own interest, but insisted he put his client's interest first and foremost in assisting Pegg in making the decision to plead guilty. Sharp also testified concerning the active involvement of Pegg's other attorneys, who decided collectively that it would be in Pegg's best interest to plead guilty. Fitzgibbons testified that he had devised and promoted the plan for Pegg to plead guilty and to cooperate with the government in order to receive a reduced sentence. Fitzgibbons further testified that although Pegg struggled with the decision to plead guilty, he believed that at the time Pegg entered the plea he wanted to do so.

Furthermore, the reasoning of Pegg's attorneys' collective recommendation for Pegg to plead guilty is clearly supported by the record. If Pegg had not pleaded guilty, Getchman, a co-conspirator turned government witness, would have testified against Pegg at trial and his testimony would have been devastating to Pegg's case. Although there was a clear alternative to the chosen defense strategy – to go to trial – there is evidence in the record to support the district court's finding that Sharp's performance was not adversely affected by Baxter's allegations. Pegg's assertion that Sharp avoided the publication at trial of Baxter's allegations against Sharp is at best speculative, and the collective recommendation by Pegg's attorneys for Pegg to plead guilty was in Pegg's best interest at the time of his sentencing.

The record amply supports the decision of the district court that Pegg did not receive ineffective assistance of counsel because of the conflict of interest of his attorney, James E. Sharp.

### 3. Inapplicability of *Per Se* Rule.

Pegg urges this Court to adopt the Second Circuit's holding in *United States v. Fulton*, 5 F.3d 605 (2d Cir. 1993), in which the court held there to be a *per se* violation of the Sixth Amendment not subject to waiver by the defendant under the circumstances of that case. In the middle of the trial at issue in *Fulton*, the government informed the court in an *ex parte* conference that the government witness on the stand previously stated that he had once imported heroin for defendant Fulton's trial counsel. *See id.* at 607. In spite of the fact that this implicated counsel in the very crime for which Fulton, the defendant, was being tried, the court permitted counsel to continue to represent defendant in the trial. *See Fulton*, 5F.3d at 608. The Second Circuit held this to be error. *See Fulton*, 5 F.3d at 612. Relying on its precedent, the Second Circuit noted that there is a *per se* violation of defendant's Sixth Amendment right to effective assistance of counsel without the necessity of showing an adverse effect as required by *Cuyler v. Sullivan*, 446 U. S. 335 (1981), "when the attorney has engaged in the defendant's crimes." *Fulton*, 5 F.3d at 611.

10

Even if there may be circumstances under which a *per se* rule should be applied, in our judgment *Fulton* would not require a reversal in this case. In limiting language in *Fulton* the court cautioned that where the district court could rule out the possibility that the allegations are true through an evidentiary hearing, a waiver is possible. *Fulton*, 5 F.3d at 613. There was an evidentiary hearing in this case, and the district court was not clearly erroneous in accepting "Sharp's uncontroverted testimony that Baxter's allegations were false." *Pegg*, 49 F.Supp. 2d at 1332.

Furthermore, the accusation in *Fulton* that counsel was involved in the alleged crime would seem to affect counsel's handling of the trial. In addressing the defendant, the district court in *Fulton* said:

> "...you understand that first of all [lead trial counsel] will be
> to some extent distracted by this and, secondly, that he will
> not be able to cross-examine the witness about this ..."

*Fulton*, 5 F.3d at 608 (quoting the district court).

In this case, there was no trial, and there was no proffer of sworn testimony from Baxter to contradict the sworn testimony from Sharp that Baxter's allegations were false. *See Pegg,* 49 F. Supp. 2d at 1332. The allegations in this case involve counsel's representation of the defendant in preparation for trial, and actions that would become a problem to counsel only if there were a trial. The allegations did not involve a charge that counsel was involved in the crime with which defendant was charged. The proceedings remained at a stage during which Sharp could continue to

11

let Pegg's interest trump any interest he might have if the case went to trial. There was an able conflict-free counsel, Fitzgibbons, available to defend Pegg in the event of a trial. Fitzgibbons was available to Pegg and did assist him in assessing the strategy and devising a plan for Pegg to plead guilty in the hopes of receiving a reduced sentence. There is no reason, under the facts of this case, to presume that the defendant suffered a violation of his Sixth Amendment right to counsel in connection with his entry of a guilty plea.

The district court properly denied Pegg's petition for relief under 28 U.S.C. § 2255.

AFFIRMED.