.UNITED STATES of America,

v.

Mark **HANNA, Marshall Bernstein, Shane Ferras Christina Classie, and Raymond Saulon, Defendants.**

No. CR–01–076(S–2)(ADS).

United States District Court,
E.D. New York.

June 29, 2002.

See, also, 198 F. Supp.2d 236.

Alan Vinegrad, United States Attorney, by Tanya Y. Hill, Assistant United States Attorney, Brooklyn, NY.

Schlam, Stone & Dolan, New York City (Peter R. Schlam, of Counsel), for the Defendant Mark Hanna.

Edward P. Jenks, Mineola, NY, Douglas T. Burns, Garden City, NY, Attorneys for the Defendant Marshall Bernstein.

Gibbons Del Deo, Newark, NJ (Lawrence S. Lustberg, Of Counsel), for the Defendant Shane Ferras.

Pillair & Vella, Mineola, NY (Robert M. Vella, Jr. Of Counsel), for the Defendant Christina Classie.

Gersten, Savage & Kaplowitz LLP, New York City (Barry S. Zone, Robert S. Wolf, Of Counsel), for the Defendant Raymond Saulon.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves allegations of a scheme to defraud investors in the sale of securities. Presently before the Court is a motion by the government to disqualify Gersten, Savage & Kaplowitz LLP ("Gersten Savage") counsel to the defendant Raymond Saulon ("Saulon") on the grounds of two separate conflicts of interest involving Gersten Savage and Saulon.

## I. BACKGROUND

The second superceding indictment (the "Indictment") charges Saulon and sixteen other defendants with securities fraud, mail fraud, wire fraud and money laundering. In particular, the government charges Saulon with participating in a scheme to manipulate the price of the securities of certain companies whose initial public offerings ("IPOs") were underwritten by HGI Incorporated ("HGI") and Maidstone Financial, Incorporated ("Maidstone").

Count one of the Indictment charges Saulon with conspiracy to defraud investors in the sale of securities arising out of the operation of HGI and Maidstone. Counts two, three, four, five, six and seven of the Indictment charge Saulon with manipulating the price of the securities of the following IPOs: Sims Communications, Inc. ("Sims"); Natural Health Trends Corporation ("Natural Health"); International Cutlery, Ltd. ("Icut"); Surge Components, Inc. ("Surge"); Community Care Services, Inc. ("Community Care"); and Univec, Inc. ("Univec"). Counts eight through thirty in the Indictment charge Saulon with mail fraud in connection with the above-stated IPOs.

The government alleges two distinct conflicts of interest involving Gersten Savage and Saulon. The first alleged conflict arises out of the representation of HGI and Maidstone by Gersten Savage with respect to its underwriting of certain allegedly manipulated IPOs in the Indictment. In particular, the government contends that Gersten Savage has a self-interest, namely avoiding the investigation of its role in the fraudulent scheme, which could lead to criminal prosecution of the firm, civil litigation by defrauded investors and professional sanctions or harm to reputation. The government contends that this interest is at odds with the interests of Saulon. The second alleged conflict arises out of Gersten Savage's representation of two witnesses for the government with regard to inquiries by the SEC and NASD involving the facts underlying this case.

## II. DISCUSSION

### A. The Right to Conflict–Free Counsel

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[T]his right to counsel includes a criminal defendant's qualified right to be represented by the counsel of his choice." *Lainfiesta v. Artuz*, 253 F.3d 151, 154 (2d Cir.2001) (citing *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988)). However, this qualified right is limited by, among other things, the Sixth Amendment right to effective assistance of counsel. *See id.*

"A defendant's Sixth Amendment right to effective assistance of counsel includes the right to representation by conflict-free counsel." *United States v. Schwarz*, 283 F.3d 76, 90 (2d Cir.2002) (internal quotation marks and citations omitted). Where the potential for a conflict of interest arises, a court must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy,* 25 F.3d 146, 153 (2d Cir.1994).

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Schwarz*, 283 F.3d at 91 (internal quotation marks and citation omitted). *See also United States v. Kliti,* 156 F.3d 150, 153 n. 3 (2d Cir.1998); *United States v. Blau,* 159 F.3d 68, 75 (2d Cir.1998). "A potential conflict of interest exists if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." *Kliti,* 156 F.3d at 153 n. 3 (citation omitted).

Two limited situations exist where an actual conflict is so severe that it constitutes a *per se* violation of a defendant's Sixth Amendment right: "(1) where the attorney was not licensed to practice law because he failed to satisfy the substantive requirements of admission to the bar, and (2) where the attorney was implicated in the defendant's crime." *United States v. Luciano,* 158 F.3d 655, 661 (2d Cir.1998).

"When a lawyer's conflict, actual or potential, may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." *United States v. Fulton,* 5 F.3d 605, 612 (2d Cir.1993) (citations omitted). Disqualification is generally the safer course given the difficulty of securing a knowing waiver where

all of the consequences of the conflict can only be dimly perceived. *Id.* at 614.

## B. The Government's Grounds for Disqualification

As to the first alleged conflict of interest, the government states that the evidence at trial will show that Gersten Savage acted as "house counsel" to HGI and Maidstone. In particular, Gersten Savage acted as Maidstone's general counsel in connection with the IPO of Sims. In addition, Gersten Savage represented HGI and Maidstone in connection with the offerings of Sims, National Health, Icut, Surge, Community Care and Univec. Moreover, Gersten Savage drafted the private placement memoranda which contained the lock-up agreements at issue in this case.

The government further contends that Gersten Savage represented Maidstone in several customer arbitrations with regard to the IPOs in this case. In addition, Gersten Savage represented HGI in arbitrations before the NASD involving disgruntled customers. Furthermore, Gersten Savage represented HGI and Maidstone in connection with matters arising out of the events underlying this case before the SEC and NASD.

The government also asserts that co-defendant Marshall Bernstein ("Bernstein"), the chairman of the board of Maidstone, is expected to present evidence that Jay Kaplowitz, a partner at Gersten Savage, informed Bernstein that lock-up purchasers could be released without violating the rules of the SEC and NASD. The government contends that this testimony is highly relevant to the government's claim that the lock-up agreements in this case were sham agreements to conceal a plan to manipulate stock prices.

Based upon Bernstein's expected defense, the government states that it has begun examining more closely Gersten Savage's role in the fraudulent conduct underlying the Indictment. In addition, the government contends that Gersten Savage's involvement is closely related to the crimes in the Indictment in that the extent and degree of its role in the criminal scheme will be an issue at trial. In particular, Gersten Savage's central role in structuring and approving deals alleged to be fraudulent raises questions with regard to the knowledge and complicity of Gersten Savage.

As to the second alleged conflict, the government asserts that Gersten Savage represented two government witnesses, namely Brian Scanlon ("Scanlon") and Stuart Litman ("Litman"), in connection with investigations by the SEC and NASD concerning the underlying facts in this case. The government intends to call these witnesses at trial. Scanlon was the vice-president and day-to-day manager at HGI until December of 1996, while Litman was the day-to-day manager at Maidstone until October of 1996. The government contends that the evidence at trial from these witnesses will be that Gersten Savage guided and advised them, in addition to other Maidstone employees, to withhold documents or "shade" their testimony before the SEC.

It should also be noted that the Court's independent investigation reveals that Gersten Savage represented Bernstein in civil litigation arising out of the use of the lock-up agreements with regard to one of the stocks in the Indictment, namely Surge. *Rich v. Maidstone Fin., Inc.,* No. 98–2569, 2001 WL 286757 (S.D.N.Y. Mar.23, 2001).

### 1. The Actual Conflict of Interest

An actual conflict of interest exists when "the attorney's and defendant's interests diverge with respect to a material factual

or legal issue or to a course of action." *Schwarz,* 283 F.3d at 91. The Court finds that Gersten Savage faces an actual conflict with regard to its representation of Saulon and its interest in preserving its integrity and reputation. Indeed, the government asserts that Gersten Savage may be involved, in some manner, in the criminal activity.

As a broker, Saulon has an obvious tactical and strategic interest in arguing that Bernstein and Mark Hanna ("Hanna"), the principals of Maidstone and HGI, conspired to conceal the fraudulent nature of the securities offerings from the investors and the brokers. Notwithstanding this obvious defense, Gersten Savage has a strong personal interest in not making this argument and not exploring this area at the trial or at sentencing, because it could implicate Gersten Savage which was apparently involved in the representation of HGI and Maidstone in connection with the offerings of the IPOs at issue in this case. In particular, exploration in this area may reveal that Gersten Savage was involved in the alleged conspiracy or that their lack of diligence permitted Bernstein and Hanna to set up the fraudulent securities offerings. As a result, the Court finds that an actual conflict of interest exists with regard to Gersten Savage's representation of Saulon.

### 2. The Per Se Conflict of Interest

■ "The *per se* rule applies when an attorney is implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that a vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrongdoing." *United States v. Fulton,* 5 F.3d 605, 611 (2d Cir. 1993) (internal quotation marks and citations omitted). However, the *per se* rule is not invoked every time "a court learns that an attorney may have committed a crime;

the attorney's alleged criminal activity must be sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." *Id.*

The Second Circuit has repeatedly noted the limited reach of the *per se* rule. *Schwarz,* 283 F.3d at 96 (stating that *Fulton* belongs to the narrow category of *per se* conflicts of interest); *United States v. Levy,* 25 F.3d 146, 157 n. 8 (2d Cir.1994) (stating that "we have repeatedly stressed the limited reach of the *per se* rule, emphasizing that it applies only when a defendant's lawyer was unlicensed or had engaged in the defendant's crimes.").

The government asserts that based upon Bernstein's expected defense that a partner at Gersten Savage advised him that the lock-up purchasers could be released without violating the rules of the SEC and NASD, it has begun examining more closely Gersten Savage's role in the fraudulent conduct underlying the Indictment. However, the government concedes that it cannot now say that it has developed evidence of criminal wrongdoing by Gersten Savage. The Court finds that the government's proffer at this point is insufficient to invoke the *per se* rule.

### 3. A Waiver of the Actual Conflict of Interest

■ It is well-settled that not all conflicts can be waived. *Schwarz,* 283 F.3d at 96. "An actual or potential conflict cannot be waived if, in the circumstances of the case, the conflict is of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation." *Id.* (citing *Kliti,* 156 F.3d at 153; *Levy,* 25 F.3d at 153). In such a situation, a court must disqualify the attorney regardless of whether the defendant wishes to waive her or his right to conflict-free counsel. *Id.* (citing *Levy,* 25 F.3d at 153).

The Court finds that no rational defendant in Saulon's position would knowingly and intelligently desire Gersten Savage's representation based upon the actual conflict of interest in this case. In particular, Gersten Savage has a strong personal interest in avoiding criminal prosecution, civil lawsuits, professional sanctions and harm to reputation arising from its involvement with HGI and Maidstone. This interest directly conflicts with Saulon's obligation to raise defenses that may inculpate Gersten Savage, both criminally and civilly. *See Schwarz*, 283 F.3d at 96 (holding that counsel's representation of the defendant conflicted with his ethical obligation to another client and his own economic self-interest to the point that no rational defendant would knowingly and intelligently waive such a conflict).

In addition, Gersten Savage's prior representation of Bernstein and two government witnesses in proceedings involving the underlying facts in the Indictment provide additional support to disqualify Gersten Savage. As stated above, Gersten Savage represented two government witnesses in connection with investigations by the SEC and NASD concerning the underlying facts in the Indictment. Gersten Savage also represented Bernstein in a civil action involving one of the stocks in the Indictment. These prior representations adversely effect Gersten Savage's ability to cross-examine its former clients. *See United States v. Gotti*, 9 F.Supp.2d 320, 324 (S.D.N.Y.1998) (explaining that the attorney-client relationship with a witness or co-defendant can give rise to a continuing obligation of confidentiality that may be breached when confidences are exploited during cross-examination or an ineffective cross-examination may occur if prior confidences are respected).

The Court also notes that these conflicts of interest could affect the sentencing phase. There could be mitigating factors that should be raised on behalf of Saulon which may inculpate Gersten Savage or cause Gersten Savage to reveal confidential communication. Accordingly, the Court concludes that no rational defendant in Saulon's position would knowingly and intelligently desire Gersten Savage's, Zone's or Wolf's representation based upon the serious conflicts of interest in this case. Accordingly, the government's motion to disqualify Gersten Savage, Zone and Wolf is granted.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the government's motion to disqualify Gersten Savage counsel to the defendant Raymond Saulon is **GRANTED;** and it is further

**ORDERED,** that Saulon is directed to retain new counsel within 30 days of the date of this decision; and it is further

**ORDERED,** that Saulon's plea agreement may be vacated by Saulon if desired, after new counsel is retained.

**SO ORDERED.**