BYE, Circuit Judge,
concurring in part and dissenting in part.
I agree in all respects with affirming the convictions and sentences of Jason Beck-man and Gerald Durand. I believe Patrick Kiley’s Sixth Amendment rights were violated at trial, however, because his counsel was laboring under á conflict of interest that adversely affected his representation of Kiley. As a result, I would reverse Kiley’s conviction and remand for a new trial. I therefore respectfully dissent from Section II.C. of the majority’s opinion.[18]
The district court never considered whether Kiley’s trial counsel, H. Nasif Mahmoud, was operating under a conflict of interest while representing Kiley on the grounds that Mahmoud was directly impli *500 cated in one of Kiley’s crimes.- Count 23 of the Second Superseding Indictment charged Kiley with money laundering in connection with a 2009 wire transfer of $100,000 from one of Trevor Cook’s fraudulent enterprises. The purported purpose of the wire transfer was to pay Mahmoud to represent the fraudulent enterprise and Kiley in a related civil case. Mahmoud attended meetings at the currency program’s place of business in July 2009, purportedly to discuss the civil litigation. The government cross-examined Julie Gilsrud, Kiley’s secretary, with the intent to show the wire transfer was done for Kiley’s benefit, or at least with Kiley’s approval. Mahmoud admitted during trial he received the $100,000 wire transfer. In closing argument, the government argued the wire transfer “was directed by Trevor Cook for the benefit of Pat Kiley. Pat Kiley had utilized Mr. Mahmoud in connection with a civil litigation. That $100,000 was for Kiley’s benefit.” The jury determined the funds Mahmoud received were laundered funds within the meaning of 18 U.S.C. § 1957, and found Kiley guilty of Count 23.
Kiley’s current counsel — appointed to represent Kiley following the postponement of his initial sentencing hearing- — argues Mahmoud’s receipt of the laundered funds (as well as his presence at the currency program’s place of business) could lead reasonable jurors to regard Mahmoud as a co-conspirator in the currency program. He further contends that where an attorney is implicated in his own client’s crimes, a conflict necessarily exists because the client and attorney have divergent interests with respect to the factual and legal underpinnings of the charge, as well as the course of action to be taken in defending against the charge. See, e.g., United States v. Fulton, 5 F.3d 605, 611-13 (2d Cir.1993) (indicating when an attorney is implicated in criminal activity sufficiently related to crimes charged against a client, an unwaivable conflict of interest exists and a per se violation of the Sixth Amendment occurs because the attorney’s “fear of, and desire to avoid, criminal charges, or even the reputational damage from an unfounded but ostensibly plausible accusation, will affect virtually every aspect of his or her representation of the defendant”).
Applying our decision in Ausler v. United States, 545 F.3d 1101 (8th Cir.2008), the majority does not presume prejudice from Mahmoud’s implication in the money laundering charge and automatically reverse Kiley’s conviction. Instead, in this case where the district court failed to inquire into the potential conflict, the majority concludes Kiley must show the conflict actually affected the adequacy of Mahmoud’s representation. See id. at 1104 (quoting Mickens v. Taylor, 535 U.S. 162, 170-71 & nn. 3, 4, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002)). Based solely upon Mahmoud’s assurance that no conflict existed, coupled with Kiley’s statement to the magistrate judge that he wanted Mahmoud to represent him, the majority concludes “the district court was not required to address the potential Count 23 conflict in the midst of this complex and lengthy trial.” Ante at 490.
I do not agree the majority’s analysis is sufficient to address the issues raised by Kiley. First, I fail to see how a conflicted attorney’s own assurance that no conflict exists should be relevant. But even assuming it is relevant, Mahmoud’s assurance only pertained to the two potential conflicts the government raised in its motion for inquiry: 1) whether Mahmoud was a necessary witness because he was. present at the July 2009 meetings; and 2) whether he had a potential conflict because he currently represented one government witness (Stephen Nortier) and formerly *501 represented another government witness (Duke Thietje). Mahmoud’s assurance did not address the conflict that matters— whether Mahmoud’s implication in Kiley’s crime, as the recipient of Count 23’s laundered funds, adversely affected his representation of Kiley.
Similarly, Kiley’s statement to the magistrate judge indicating he “want[ed] to keep Mahmoud” as his attorney did not address the Count 23 implication conflict. Kiley’s statement responded solely to questions regarding Mahmoud’s representation of Nortier and Thietje. See Mot. Tr. at 14-25, District Ct. Docket # 127. Kiley was never questioned about the conflict stemming from Mahmoud’s receipt of $100,000 in laundered funds, nor was he ever given the opportunity to knowingly and voluntarily waive that conflict, assuming it could be waived. See United States v. Lopesierra-Gutierrez, 708 F.3d 193, 201-02 (D.C.Cir.2013) (concluding the conflict stemming from defense counsel’s receipt of laundered funds could be knowingly and voluntarily waived, but only “where a stipulation bars presentation of incriminating testimony” and thus the jury never learns that defense counsel received laundered funds).
Kiley contends the possibility that Mah-moud’s implication in Count 23 created a conflict “was sufficiently apparent ... to impose upon the court a duty to inquire further,” such that the failure to conduct the inquiry violated Kiley’s Fifth Amendment due process rights. Wood v. Georgia, 450 U.S. 261, 272, 273, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). I do not find the majority’s analysis — which appears to consist solely of an examination of the district court’s inquiry into other potential conflicts — particularly helpful in addressing that due process issue.
With respect to Kiley’s claim that his Sixth Amendment rights were violated, the majority defers ruling on Kiley’s ineffective-assistance-of-counsel claim until it has been presented in a subsequent proceeding under 28 U.S.C. § 2255. I would address the Sixth Amendment claim now. In my view, Mahmoud’s ability to provide constitutionally effective representation to his client came to an end when the jury learned Mahmoud was the recipient of Count 23’s laundered funds, was present at the currency program’s place of business, and participated in discussions with Kiley’s co-conspirators about the currency program. The jury’s knowledge of Mahmoud’s implication in Count 23 is a bell that has been rung, and cannot be undone for purposes of this trial by requiring the district court to hold an evidentiary hearing in a § 2255 proceeding.
In the situation we have here, where the jury knew Mahmoud received the laundered funds and was directly implicated in Kiley’s charged conduct, it is at least debatable whether the conflict should be viewed as a per se violation of the Sixth Amendment and require automatic reversal of Kiley’s conviction. See Fulton, 5 F.3d at 611-13 (applying a per se rule). But even assuming Kiley must demonstrate the conflict adversely affected Mahmoud’s performance under Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), I believe Kiley satisfies that standard.
In Dawan v. Lockhart, 31 F.3d 718 (8th Cir.1994), our court addressed a conflict created by the same attorney representing both the defendant and his co-defendant in a burglary and theft-of-property prosecution. Stout, the co-defendant, pleaded guilty and gave a sworn statement implicating Dawan, the defendant. At Dawan’s trial, after the attorney called Stout as a witness and he testified Dawan was not involved in the charged crimes, the prosecutor cross-examined Dawan about his pri- *502 or sworn testimony implicating Dawan, specifically “highlighting] the fact that Dawan’s counsel was the attorney who had represented Stout when the statement was made.” Dawan, 31 F.3d at 720. Stout then admitted he had previously implicated Dawan, but claimed he had lied under oath. Id.
Applying Cuyler’s adverse effect standard, our court held Dawan’s Sixth Amendment rights were violated because the jury learned — via the prosecutor’s cross-examination — that Dawan's counsel had also represented a witness who changed his story. We said the “prosecutor’s comments made Dawan’s attorney look less credible and, by extension, made Dawan look less credible as well.” Id. at 722.
Similarly, here the jury learned that Mahmoud received laundered funds derived from the fraudulent currency program. The jury also learned Mahmoud was present at the currency program’s place of business and participated in discussions regarding civil litigation the co-conspirators faced. Based on these facts, it strains credulity not to expect a reasonable jury to consider whether Mahmoud himself was part of the criminal conspiracy. If it was even ostensibly plausible for the jury to believe Mahmoud was involved in the criminal conspiracy, I believe we should presume it would have “affect[ed] virtually every aspect of [Mahmoud’s] representation of the defendant.” Fulton, 5 F.3d at 613. At a minimum, however, Mahmoud’s implication in Count 23, as the admitted recipient of funds the jury found to be laundered, would undoubtedly hurt Mahmoud’s credibility with the jury, and by extension make Kiley look less credible as well. “This is a sufficient adverse effect for purposes of Cuyler.” Dawan, 31 F.3d at 722.
I respectfully dissent from Section II.C. of the majority’s opinion.

. Because I would reverse Kiley’s conviction, I would not reach the other trial and sentencing issues relevant to him.